**Will E. ROGERS, Defendant below, Appellant,**

v.

**STATE of Delaware, Plaintiff below, Appellee.**

Supreme Court of Delaware.

Argued April 14, 1975.

Decided July 7, 1975.

Rehearing Denied Aug. 6, 1975.

Richard M. Baumeister, Asst. Public Defender, Wilmington, for defendant below, appellant.

Richard J. McMahon, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, Chief Justice, DUFFY and McNEILLY, Justices.

McNEILLY, Justice.

This is an appeal by defendant from his conviction of attempt to commit rape and assault in the first degree. Defendant contends that the Court's instructions to the jury that an alibi defense is an affirmative defense was prejudicial error.

## I

At approximately 11:30 a. m. the victim was violently assaulted in her store by a tall, black man wearing checked trousers. Her assailant beat her about the face and head and attempted to rape her. She testified that she had no opportunity to see his face because of the sudden and violent nature of the attack. She managed to break loose, scream for help, and beat on the wall of the store next door. Her pleas for help were heard by Fred S. Gamiel, the owner, Mark Gamiel, his son, and George Carson, an employee. Mark Gamiel and Carson ran to her aid, and Fred Gamiel who was on the telephone at the time quickly followed. As the first two men reached the glass door of the victim's store, the assailant was still inside and Mark Gamiel had a clear and unobstructed view of him. They attempted to prevent his exit but were unable to do so. As he came out of the door he struck Carson knocking him to the pavement. Carson testified that he could not identify the defendant because he "never really got that good a look at him." On the other hand, Mark Gamiel saw the assailant both inside and outside the candy store and unequivocally identified him as being the defendant. He described him as being six feet two inches (6'2") to six feet four inches (6'4") tall, weighing 240 to 260 pounds, wearing checked trousers, knit cap, car coat, a moustache and whiskers under his chin.

By the time the assailant had pushed his way out of the door Fred Gamiel was at the scene, and he also attempted to halt the assailant's escape to no avail. His description of defendant was equally as clear and as accurate as that of his son. In addition to the physical description, Fred Gamiel stated that when he saw the expression on defendant's face he knew he would never forget him if he saw him in person again.

On the day of the offenses, Fred Gamiel, who had no artistic training, made a composite drawing of the assailant. Approximately one week later both Fred Gamiel and his son independently identified defendant by looking through a book containing twenty to thirty photographs of different individuals. They again identified him at the preliminary hearing and at trial.

An alibi defense was presented purporting to place defendant at the home of his sister-in-law at the time of the offense. In support of his defense, defendant testified that he was at his sister-in-law's talking to his sister until about noon of the day involved; that he saw his brother-in-law at about one o'clock that day, and that he owned neither black and white checked pants nor a ski cap.

His brother-in-law testified that he saw defendant sometime after one o'clock; that he had no idea where he was prior to that time; that when he saw the defendant he was wearing clean plain colored clothes; and that it was not his style to wear checked pants or floral shirts because he is big.

The defendant's sister testified that she and defendant had lunch together after noon on the day in question; that he went next door between eleven-fifteen and noon; that he always wears dark clothes; and that she had never seen him wear a ski cap.

The defendant's sister-in-law testified that she left defendant and his sister at eleven or eleven fifteen; that at the time he was wearing either black or burgundy trousers, a wide rimmed hat, either a flowered or burgundy sweater, black shoes and a long black coat. She further testified that she had never seen him in a pair of black and white trousers or any other things like checked because he was large and never wore that type clothing.

It is significant to note that at the time defendant was arrested about a week after the offense, he was wearing a black car coat, a floral shirt and checked trousers. It should also be noted that his size and facial appearance is not in dispute.

**610**

## II

In the jury instructions, the Trial Judge stated the following with reference to the alibi defense:

"Now, the Defendant contends that he was not present at the time and at the place where he is alleged to have committed the offenses charged in the indictment. This is known as affirmative defense of alibi. If after a careful consideration of all the evidence in the case you have a reasonable doubt as to whether the Defendant was present at the time and place alleged you should acquit him, find him not guilty.

Now, it is the Defendant's burden to prove to your satisfaction the defense of alibi and the law reads that affirmative defense of alibi is established by a preponderance of the evidence when the jury is persuaded that the evidence makes it more likely than not that each element of the affirmative defense existed at the required time. Therefore, if you are convinced by a preponderance of the evidence that the Defendant, Will E. Rogers, was not present at the scene of the offense at the time they allegedly were committed, then you must return a verdict of not guilty."

Defendant contends that this instruction was error in its labelling an alibi an affirmative defense and placing the burden upon defendant to prove his whereabouts at a place other than the crime scene. We agree.

## III

■ The defense of alibi is not an affirmative defense. In *Halko v. State*, Del.Supr., 4 Storey 180, 175 A.2d 42 (1961), this Court held that a charge which places the burden upon the accused to prove an alibi to the jury's satisfaction improperly shifts the burden of proof that rests with the State.

■ But the alibi testimony in this case is fatally weak. The vagueness and generality of defendant's alibi witnesses leaves defendant actually unaccounted for during the crucial time and does not establish a clear factual alibi issue.

Accordingly we hold that by reason of the strength of the State's case against the defendant and the weakness of the alibi testimony adduced as a defense, we are satisfied beyond a reasonable doubt that the error in the charge to the jury was harmless error. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Affirmed.