**Anderson BROWN, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**Bakr Dillard, Defendant Below, Appellant,**

v.

**State of Delaware, Plaintiff Below, Appellee.**

Nos. 617, 2007, 611, 2007.

Supreme Court of Delaware.

Submitted: Aug. 27, 2008.

Decided: Oct. 6, 2008.

36. *Culver v. State*, 2008 WL 2987183, at *1.

37. *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).

Nicole M. Walker, Esquire, Office of the Public Defender, Wilmington, Delaware, for Anderson Brown.

James J. Haley, Jr., Esquire, Ferrara, Haley & Collins, Wilmington, Delaware, for Bakr Dillard.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

HOLLAND, Justice.

This proceeding is the consolidated appeals of co-defendants Bakr Dillard and Anderson Brown from final judgments entered by the Superior Court. The jury found each defendant guilty of Felony Murder in the First Degree, Manslaughter (a lesser-included offense of Intentional Murder in the First Degree), Robbery in the First Degree (two counts) and Conspiracy in the Second Degree. Both defendants were sentenced to life imprisonment for the murder conviction.

In this direct appeal, Dillard and Brown contend that their convictions must be reversed because the Superior Court erred when it failed to instruct the jury on their alibi defenses. We have concluded that the failure of the Superior Court to provide the jury with alibi instructions, after the defendants requested such instructions and presented some credible evidence in support of their alibi defenses, was contrary to the well-established Delaware precedent in *Jackson v. State*[1] and constitutes reversible error. Therefore, the convictions of each defendant must be reversed.

### Facts

On March 26, 2005, Dion Gibbs ("Gibbs") and Steven Cleveland ("Cleveland") were visiting friends on Spruce Street on the east side of Wilmington until around midnight. While walking back to Cleveland's house, they were accosted by four men on Kirkwood Street. According to Gibbs, one of the assailants held a gun to his head and demanded his valuables. While Gibbs emptied his pockets, Cleveland protested vigorously and was struck in the face with the gun and told to "shut-up." Gibbs was then ordered to remove his clothing and to run in the opposite direction. As Gibbs was running away, he heard several gunshots.

At 12:45 a.m., the police received a "shots fired" complaint and arrived at the scene shortly thereafter. Cleveland, who had been shot several times, was still alive. Before he died, Cleveland told the police that four men tried to rob Gibbs and Cleveland. Two of the men carried handguns. Cleveland did not know their identities. Gibbs also did not know any of the assailants, but told the police that one had a "Sunni" beard.

---

1. *Jackson v. State,* 374 A.2d 1 (Del.1977).

Neighborhood residents Ruth Ann Clark and Joanne Brown, who shared a house on Kirkwood Street, were the only witnesses who claimed to have seen the robbery and the shootings. Both gave unsworn statements to the police. Although the record does not include a transcript of those videotaped statements, the statements were substantially as follows: Clark stated that she had witnessed the conclusion of the robbery, as well as the shootings. She identified three of the four robbers by their nicknames: "Bam" (Andrew Brown), "AD" (Anderson Brown) and "Breeze" (Dillard), but did not know the fourth. Clark described Dillard as having a "Sunni" type beard.

According to Clark, two of the four assailants carried firearms: Andrew Brown and the fourth man she could not identify. Clark saw one of the victims (Gibbs) strip naked and run in the direction of 9th Street. She then saw Anderson Brown and Dillard tussling with Cleveland. Clark saw one person hit Cleveland with a gun and saw Andrew Brown fire several shots at Cleveland, after which the four men ran up Kirkwood Street in the direction of 10th Street.

Joanne Brown's statement was not as precise. She did not claim to have witnessed the robbery or the shootings, but stated that she saw "Bam," "AD" and "Breeze" on the corner of 10th and Kirkwood Streets shortly before the shooting. Later she saw the "naked boy" flee up the block in the direction of 9th Street, heard gunshots, and then saw the backs of four men fleeing from the scene. She believed that those were the same men she had seen earlier. Joanne Brown stated that Dillard was wearing a "ROCA" coat with green lettering.

Police arrested Andrew Brown, Anderson Brown, and Dillard. Andrew Brown was tried separately and convicted of First Degree Intentional Murder, First Degree Felony Murder, First Degree Robbery (two counts), weapons offenses (four counts) and Conspiracy.[2] Anderson Brown and Dillard were charged with the same offenses and were tried together before a Superior Court jury.

Clark and Joanne Brown testified at both Andrew Brown's trial and at the joint trial of Anderson Brown and Bakr Dillard. On both occasions, Clark disavowed her unsworn statement to the police. At the Anderson Brown/Dillard trial, Clark testified that she was a drug addict and that on the night of the robbery, she had been using cocaine and was high. Clark further testified that Anderson Brown was present but was "really trying to stop it," and that Dillard "was not there." Similarly, Joanne Brown stated that she was "high all the time" and had used drugs on the night of the robbery. As a result, she testified that she did not remember seeing the Brown brothers or Dillard that night or ever seeing a naked person. Because Clark's and Joanne Brown's trial testimony was inconsistent with their previous statements to the police, the State introduced as evidence their above-described out-of-court videotaped statements to the police. Those statements were played for the jury pursuant to Title 11, section 3507 of the Delaware Code.[3]

2. *See Brown v. State,* 947 A.2d 1062 (Del. 2007). Andrew Brown's convictions were affirmed on appeal. *See Brown v. State,* 2008 WL 1953517, at *1 (Del.Supr.).

3. Title 11, section 3507 of the Delaware Code relevantly provides that "[i]n a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value .... regardless of whether the witness' in-court testimony is consistent

## Alibi Defenses

Dillard denied having participated in the robbery, and raised a defense of alibi. Dillard testified that at the time of the robbery he was in Tiara Flonnory's apartment located off of Maryland Avenue, outside the Wilmington city limits. Flonnory was Dillard's girlfriend and they had a daughter together, whom Dillard was responsible for watching while Flonnory was at work.

Dillard testified that on March 26, 2005, he woke up at Flonnory's apartment around 10:00 a.m. or 11:00 a.m. and spent some time with his daughter until Flonnory returned home from work around 2:30 p.m. or 3:00 p.m. He then left Flonnory's apartment around 3:00 p.m. or 4:00 p.m. and went to the east side of Wilmington, where Kirkwood Street is located. Dillard hung out at his cousin's house on Lombard Street and then "walked around for a little while." At around 8:00 p.m., he left the east side and drove to Nikesha Whye's house in Newark.[4]

A little before 10:00 p.m., Dillard left Newark and drove back to Flonnory's apartment in Wilmington. Dillard testified that he remained there overnight because he had to watch his daughter while Flonnory was at work the next day. Dillard further testified that his nickname was "Breeze," that at the time of his arrest he had a "Sunni" beard (which he had shaved off in the meantime), and that he owned a "ROCA" coat (but was not sure if he was wearing it on the night of the robbery).

Both Whye and Flonnory testified at trial in support of Dillard's alibi defense. Whye testified that on March 26, 2005,

Dillard came to her apartment a little after 8:00 p.m. and that he was still there when she went to sleep some time after 9:00 p.m. Whye stated that she did not hear anybody leave the apartment after she went to bed, but that when she woke the next morning, Dillard was not there.

Flonnory testified that she was working as a cook at the Mary Campbell Center and that her shift on March 26 and 27, 2005, was from 6:00 a.m. until 2:30 p.m. She stated that when she came back from work on March 26, 2005 (at around 3:00 p.m.), Dillard was in her apartment. He left the house at some point and returned around 10:00 p.m. because Flonnory "had to be [at] work the next morning, and [Dillard] had to watch the baby." Flonnory testified that she went to bed at around 12:00 a.m. or 12:30 a.m. and that when she woke up the next morning at around 4:30 a.m. to go to work, Dillard was in bed with her.

Anderson Brown also denied having participated in the robbery and claimed that he was in Philadelphia with his girlfriend on March 26 and 27, 2005. Brown's girlfriend, Aigner Gardner, testified at trial that she and Brown were in Philadelphia at her father's house on the night of the shooting. She testified that they spent the evening together watching television, hanging out, eating and sleeping. She also testified that they did not return to Delaware until the following day, March 27, 2005.

## Alibi Instruction Denied

Based on the evidence presented, both defendants requested that an alibi instruction be given to the jury. The record on

---

with the prior statement or not." Del.Code Ann. tit. 11, § 3507(a), (b).

**4.** Dillard referred to Whye as his "sister," even though he testified that she was not his natural sister but rather his brother's girlfriend. According to Whye, Dillard had his own bedroom in her house.

appeal does not disclose the entire content of the proffered alibi instruction. The transcript of the hearing indicates, however, that the requested instruction included language similar to the Superior Court's standard alibi instruction: "If the evidence on [the alibi] raises in your mind a reasonable doubt as to the defendant's guilt, you must give him the benefit of that doubt and return a verdict of not guilty."

The trial judge reviewed the proposed alibi instruction in its entirety but refused to give it to the jury. The trial judge reasoned that an alibi instruction was redundant, because he/she intended to give an instruction on burden of proof. The trial judge stated:

> I find that [the proposed instruction] is an unnecessary commentary on the evidence. If I do that, I probably should list every single bit of evidence in the case and say, if this piece of evidence raises a reasonable doubt, you must find the defendant not guilty.... Obviously, counsel, however, can make this argument. It is [a] perfectly valid legal argument.

Instead of the proffered alibi instruction, the trial judge gave a general instruction on burden of proof (with no specific reference to the alibi defense). That general instruction informed the jury that "[t]he burden of proof is upon the State to prove all of the facts necessary to establish each and every element of the crime charged beyond a reasonable doubt." After closing arguments and before the jury deliberated, the judge reiterated that instruction. "Furthermore, because the burden of proof, as described earlier, is upon the State to prove the existence of all elements of the crime beyond a reasonable doubt, a defendant is not required to present any evidence on his own behalf."

The jury returned a verdict finding both Dillard and Brown guilty of Felony Murder in the First Degree, Manslaughter (a lesser-included offense of Intentional Murder in the First Degree), Robbery in the First Degree (two counts) and Conspiracy in the Second Degree. Both defendants then moved for a judgment of acquittal. Anderson Brown also moved for a new trial, challenging, among other things, the trial judge's refusal to give the requested alibi instruction. The trial judge denied those motions.

### Standard of Review

Dillard and Brown contend that the trial judge's refusal to provide an alibi instruction constituted reversible error. The defendants' timely requests for an alibi instruction properly preserved this issue for appeal. This Court's standard of review is *de novo*.[5]

### Alibi Instruction Required

In *Jackson v. State,* this Court held that where there was sufficient evidence to justify a charge on alibi, "[it] was prejudicial error to deny the substance of that request" and reversal was required.[6] Two years later, in *Gardner v. State,* we again held that an alibi instruction should be given if "there is some credible evidence showing that the defendant was elsewhere when the crime occurred ... [and] if a defendant requests an instruction on alibi."[7] In *Gardner,* we also held that where the defendant makes no specific request for an alibi instruction, "a duty to [*sua sponte* ] instruct the jury upon alibi may arise [in certain circumstances], so that the

---

5. *Wright v. State,* 953 A.2d 144, 2008 WL 343638, *2 (Del.Supr.).

6. *Jackson v. State,* 374 A.2d 1, 2 (Del.1977).

7. *Gardner v. State,* 397 A.2d 1372, 1374 (Del. 1979).

failure to do so would amount to a manifest defect affecting the defendant's substantial rights and thus constitute plain error." [8]

■ This Court has defined the alibi defense as " 'a denial of any connection with the crime,' and is based upon evidence that the defendant 'was somewhere other than at the place the crime is alleged to have been committed when it is alleged to have been committed.' " [9] It is well settled that our holding in *Jackson* requires the trial judge to instruct the jury on the alibi if the defendant requests the instruction and presents some credible evidence of the alibi. [10] This Court has defined "some credible evidence" as evidence that is "capable of being believed." [11] Sworn testimony constitutes "some credible evidence" since the jury must assess the credibility and decide whether to believe any sworn testimony presented at trial.

■ The State argues that the Superior Court's general instructions on burden of proof eliminated any prejudice. That argument was rejected by this Court in *Jackson*. By requiring a specific instruction on an alibi defense that explains "the context within which evidence of alibi must be evaluated," the trial court prevents the jury from assuming that the jury could "assume that the defendant bears the burden of proving alibi." [12] In fact, because the defense of alibi is not an affirmative defense, the defendant does not have the burden of proving his alibi. [13] Instead, a proper alibi instruction informs the jury that, "if the proof adduced raises a reasonable doubt of [the] defendant's guilt, either by itself or in conjunction with all other facts in the case, the defendant must be

8. *Id.* Since both Dillard and Brown requested an alibi instruction after presenting their alibi witnesses, the *Jackson de novo* standard of review, and not the *Gardner* plain error standard, is applicable to this case.

9. *Gardner v. State*, 397 A.2d 1372, 1373 (Del. 1979) (quoting *Halko v. State*, 175 A.2d 42, 49 (1961) and *Jackson v. State*, 374 A.2d 1, 2 (1977)).

10. *Jackson v. State*, 374 A.2d at 2. Delaware's jurisprudence on alibi instructions is consistent with that of a majority of the federal courts. *See, e.g., United States v. Burse*, 531 F.2d 1151, 1153 (2d Cir.1976) (finding error when the trial court failed to give an alibi instruction when the prosecution's case was "not overwhelming" and defendant presented an alibi and requested an alibi instruction); *United States v. Marcus*, 166 F.2d 497, 504 (3d Cir.1948) (holding that the defendant is entitled to an alibi instruction that explains the burden of proof when the defendant requests such instruction); *United States v. Hicks*, 748 F.2d 854, 857 (4th Cir.1984) (holding that the defendant is entitled to an alibi instruction when requested and supported by evidence in the record); *United States v. Meg-*

*na*, 450 F.2d 511, 513 (5th Cir.1971) (finding error when the trial court failed to give an alibi instruction after defendant presented an alibi defense and requested such an instruction); *United States v. Dye*, 508 F.2d 1226, 1231 (6th Cir.1974) (explaining that a defendant is entitled to a jury instruction for a defense that is presented to the court and supported by evidence in the record); *United States v. Webster*, 769 F.2d 487, 490 (8th Cir. 1985) (holding that a defendant is entitled to an alibi instruction when requested and supported by evidence in the record); *United States v. Hoke*, 610 F.2d 678, 679 (9th Cir. 1980) (finding error in trial court's failure to give an alibi instruction when requested by the defendant and the defendant's alibi and the prosecution's case rested on credibility determinations by the jury).

11. *Wonnum v. State*, 942 A.2d 569, 573–74 (Del.2007).

12. *Jackson v. State*, 374 A.2d at 2.

13. *See, e.g., Rogers v. State*, 343 A.2d 608, 610 (Del.1975); *Miller v. State*, 233 A.2d 164, 166 (Del.1967); *Halko v. State*, 175 A.2d 42, 49 (Del.1961).

acquitted." [14]

Here, the general instructions given by the Superior Court informed the jury that "[t]he burden of proof is upon the State to prove all of the facts necessary to establish each and every element of the crime charged beyond a reasonable doubt" and that "a defendant is not required to present any evidence on his own behalf." Although the general instructions accurately addressed each party's burden of proof, or lack thereof, a specific instruction on alibi was required under this Court's holding in *Jackson*.[15] The jury should have been instructed that they "must acquit the defendant[s] if they find that the evidence [of each defendant's alibi] raises a reasonable doubt as to [each] defendant's guilt." [16]

▆ Unlike the defenses contained within the Delaware Code, the alibi defense is not an affirmative defense and is not required to be proven "to the jury's satisfaction." [17] Without an alibi instruction in this case, the jury was erroneously "left free to assume that the defendant b[ore] the burden of proving alibi." [18] An alibi instruction is required so that a jury does not make a determination of guilt based on the "failure of the defense rather than because the evidence introduced by the [state] ha[d] satisfied the jury of the defendant's guilt beyond a reasonable doubt." [19]

Thirty years ago, our holding in *Jackson* established that a trial judge must give the jury an alibi instruction where sufficient credible evidence is presented and a timely request is made. Relying on *Jackson*, Dillard and Brown argue that the trial judge was obligated to give the requested alibi instruction and that the failure to do so was prejudicial error requiring reversal. We agree. The sworn testimony of the alibi witnesses presented by Dillard and Brown, along with the defendants' requests for the alibi instruction, required the trial judge to provide the alibi instruction.[20] We hold that the Superior Court committed reversible error by not providing the jury with an alibi instruction.

### Conclusion

The judgments of the Superior Court are reversed and these matters are re-

14. *Halko v. State*, 175 A.2d at 49.

15. *See also United States v. Simon*, 995 F.2d 1236, 1243–44 (3d Cir.1993) (holding that "given [defendant]'s defense of alibi, the trial court's failure to provide [an alibi instruction] was not cured by the general instruction that the government must prove guilt beyond a reasonable doubt ... nor ... by the general admonition that the 'burden of proof never shifts to a defendant.' ... [because] in the special case of an alibi defense the jury charge on alibi must include a specific instruction setting forth the government's burden of proof") (internal citations omitted) (citing *United States v. Booz*, 451 F.2d 719, 723 (3d Cir.1971), *cert. denied*, 414 U.S. 820, 94 S.Ct. 45, 38 L.Ed.2d 52 (1973); *United States v. Barrasso*, 267 F.2d 908, 910–11 (3d Cir. 1959)).

16. Del.Code Ann. tit. 11, § 303(c); *Jackson v. State*, 374 A.2d at 2.

17. *Rogers v. State*, 343 A.2d at 610 (citing *Halko v. State*, 175 A.2d at 49).

18. *Jackson v. State*, 374 A.2d at 2. *See also Halko v. State*, 175 A.2d at 48–49 (finding that an erroneous alibi instruction informed the jury "that the burden was on the defendant to prove [the alibi] by a preponderance of the evidence").

19. *Rogers v. Redman*, 457 F.Supp. 929, 934 (D.Del.1978) (noting that "it is reversible error to refuse a defendant's request to the effect that, even if the alibi witnesses are disbelieved, the burden of proof remains with the government"); *United States v. Zuniga*, 6 F.3d 569, 570 (9th Cir.1993).

20. *Jackson v. State*, 374 A.2d at 2.

manded for further proceedings in accordance with this opinion.[21]

21. Brown presented two additional arguments in his appeal. Brown contends that the evidence was insufficient to establish his complicity in the robbery/homicide. The relevant inquiry on appeal is whether, considering all of the evidence in the light most favorable to the State, including all rational inferences to be drawn therefrom, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dixon v. State*, 567 A.2d 854, 857 (Del.1989) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The record does not support Brown's argument that the evidence was insufficient to support the jury's verdicts. Brown's other argument is that the prosecutor's closing argument constituted plain error. That argument is moot.