# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | |
| | ) | **ID No. 1701009508** |
| DENEISHA WRIGHT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

*Upon Consideration of Defendant's Motion for Postconviction Relief:*

### DENIED

Submitted: December 12, 2022

Decided: February 21, 2023

Sean Lugg, Esquire, Deputy Attorney General, of the DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, for the State of Delaware.

Patrick Collins, Esquire, of COLLINS & PRICE, Wilmington, Delaware, for Deneisha Wright.

**RENNIE, J.**

## INTRODUCTION

On May 1, 2017, a grand jury indicted Deneisha Wright on two counts of Murder in the First Degree (intentional murder and felony murder), one count of Attempted Robbery in the First Degree, three counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), and one count of Possession of a Firearm by a Person Prohibited ("PFBPP").[1] The police alleged that Ms. Wright, who was admittedly "really ripped on Xannies," fatally shot Charles Mays during a robbery gone wrong.

The case against Ms. Wright proceeded to a jury trial in June 2018.[2] After a six-day trial, the jury convicted her of Murder in the First Degree (felony murder), Attempted Robbery in the First Degree, two counts of PFDCF, and one count of Carrying a Concealed Deadly Weapon.[3] Following the verdict, the Court independently assessed the evidence and found Ms. Wright guilty of the severed PFBPP charge.[4] She was sentenced to life imprisonment plus nine years in November 2018.[5]

---

[1] D.I. 2.
[2] D.I. 30, 31, 34.
[3] *Id.*
[4] D.I. 3.
[5] D.I. 48.

Ms. Wright filed the motion for postconviction relief presently before the Court, after the Delaware Supreme Court affirmed her convictions on direct appeal.[6] Through the motion, she asserts a single claim of ineffective assistance of counsel based on her trial attorney's failure to request an alibi instruction.[7] After careful review of the motion and the record, the Court has concluded that Ms. Wright is not entitled to relief. Accordingly, for the reasons discussed below, her motion is **DENIED**.

## FACTUAL OVERVIEW

The Delaware Supreme Court summarized the underlying facts of this case in its decision on direct appeal:

> The charges arose from the shooting death of Charles Mays. The evidence presented at trial fairly reflects that in the early afternoon of January 14, 2017, Mays's pick-up truck crashed in Wilmington, and Mays was found unresponsive inside, with gunshot wounds to his legs. Mays was transported to the hospital, where he was pronounced dead. A trail of blood led police officers from Mays's truck to a nearby apartment building. Surveillance video obtained from the apartment complex showed Braheem Mitchell (Ms. Wright's brother) and Kori Thomas (a friend of the family), exiting Apartment 1-A. Lisa Mitchell (Ms. Wright's aunt) then exited the apartment, where she lived with her daughter Sharnice Mitchell, and approached Mays's truck. While Lisa Mitchell was standing at the truck, a fourth person exited Apartment 1-A, stopped briefly behind a car, and then approached the passenger side of Mays's truck. As the

---

[6] *Wright v. State*, 2019 WL 2417520 (Del. June 6, 2019).
[7] D.I. 77.

truck pulled away, knocking Lisa Mitchell to the ground, the fourth person extended an arm toward the passenger door of the truck and shot Mays.

… Lisa Mitchell testified that she purchased pills from Mays every morning, and that she arranged to meet Mays that morning. As she leaned down to give Mays the money for the pills, someone approached the truck, shooting a gun. Lisa Mitchell got knocked down as the truck began to drive away, and as she stood up, she saw that the shooter was Wright.

… Ralph Mitchell, Wright's cousin, testified that he was at Apartment 1-A on the morning of January 14, 2017, and that Wright, Sharnice Mitchell, Latasha Brown (also known as "Brownie"), Kori Thomas, and Braheem Mitchell were also there. He testified that he heard the others plotting to have Lisa Mitchell call Mays to the apartment so they could rob Mays of pills and money. He testified that he and Brownie watched from the apartment window and that he saw Wright fire four shots at Mays. On the surveillance video, Ralph Mitchell identified Braheem Mitchell and Kori Black as the first two people to leave the apartment, followed by Lisa Mitchell and then Wright.

… Tyrell Simpson testified that he was in a romantic relationship with Wright for approximately one year in 2016-2017. He stated that around 12:30 p.m. on January 14, 2017, he and Wright were at their residence when Braheem Mitchell and Kori Black stopped by and Wright abruptly left with them. Then, in the evening of January 14, Simpson spoke with Wright on the telephone and "[she] said she had done something dumb … She had shot someone." Simpson also testified that about a week before the incident, he had heard Wright talking to Braheem Mitchell about robbing Mays because Mays had money

4

from selling pills. Simpson testified under a plea agreement and cooperation agreement reached with the State in connection with unrelated charges.

… When law enforcement located Wright approximately ten days after the shooting, she was wearing a jacket that the State suggested appeared similar to the jacket worn by the shooter in the surveillance video. Expert testing identified several particles that were consistent with gunshot residue on the jacket. Ballistics evidence indicated that a gun recovered by probation officers some time after the incident was the gun that killed Mays, but no link was established between Wright and the residence where the gun was found or its occupants.

… The defense focused on questioning the credibility of the State's witnesses and suggesting that Brownie, who died before trial, was the shooter. Wright testified that she was not at Apartment 1-A on January 14, 2017, and that she did not attempt to rob Mays and did not shoot Mays. She testified that she was at the corner store at the time of the shooting. She further testified that Lisa Mitchell, Ralph Mitchell, and Tyrell Simpson each had conflicts with her that could have motivated them to provide false testimony against her. Aigner Neal, who had children with Wright's brother, and Marsha Mitchell, Wright's mother, testified that the shooter on the video looked like Brownie and not Wright. Robin Henry, who was Wright's cousin and Ralph Mitchell's sister, testified that a few days after Mays was shot, she drove Brownie on some errands. When Brownie went into a store, Henry discovered that a wallet that Brownie left on the seat was Mays's wallet.[8]

## PROCEDURAL HISTORY

---

[8] *Wright*, 2019 WL 2417520, at *1-2.

Ms. Wright initially filed a *pro se* motion for postconviction relief in July 2020.[9] Because her motion was filed "within the extended deadline set by the Delaware Supreme Court" due to the COVID-19 pandemic, the Court deemed the motion to be timely filed.[10] The Court also directed the Office of Conflicts Counsel to appoint counsel for Ms. Wright's postconviction proceedings, which it did.[11] Thereafter, Ms. Wright's counsel filed an amended motion, which the Court considers here.[12] Under Superior Court Criminal Rule 61(g)(2) and *Horne v. State*,[13] the Court ordered Ms. Wright's trial counsel to submit an affidavit to be considered as part of the record in this proceeding.[14] The Court then directed the State to respond, and gave Ms. Wright leave to reply to trial counsel's and the State's submissions.[15] The motion is now ripe for consideration.

## STANDARD OF REVIEW

Before addressing the merits of any motion for postconviction relief, the Court must first determine whether the claims pass through the procedural filters of Rule 61.[16] Rule 61 imposes four procedural imperatives upon a

---

[9] D.I. 65.

[10] *See State v. Wright*, 2020 WL 6376647, at *2 (Del. Super. Oct. 30, 2020).

[11] D.I. 77.

[12] D.I. 83.

[13] 887 A.2d 973, 975 (Del. 2005).

[14] D.I. 85.

[15] *Id.*

[16] Super. Ct. Crim. R. 61; *Younger v. State*, 580 A.2d 552, 554 (Del. 1990) ("It is well-settled that the Superior Court … must address the procedural requirements of Rule 61 before considering the merits of [the postconviction] motion.").

defendant bringing a motion for postconviction relief: (1) the motion must be brought within one year after the judgment of conviction is final; (2) any basis for relief must not have been asserted previously in any prior postconviction proceedings unless warranted in the interest of justice; (3) any basis for relief not asserted in the proceedings below as required by the court rules is subsequently barred unless defendant can show cause and actual prejudice; and (4) any ground for relief must not have been formerly adjudicated in any proceeding unless warranted in the interest of justice.[17]

To prevail on an ineffective assistance of counsel claim, the defendant must meet the two-prong test set out in *Strickland v. Washington*.[18] Specifically, the defendant must show counsel's representation fell below an objective standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability the result of the proceeding would have been different.[19] Further, "review of counsel's representation is subject to a strong presumption that counsel's conduct was professionally reasonable."[20] An ineffective assistance claim is not a question

---

[17] *Id.*
[18] 466 U.S. 668 (1984).
[19] *Albury v. State*, 551 A.2d 53, 58 (Del. 1988).
[20] *Dawson v. State*, 673 A.2d 1186, 1190, *cert. denied*, *Dawson v. Delaware*, 519 U.S. 844 ("Counsel's efforts … enjoy a strong presumption of reasonableness.").

of hindsight about what trial counsel could have done better; rather, the question is whether trial counsel's actions were adequate.[21]

## ANALYSIS

With the above in mind, the Court is satisfied that Ms. Wright has presented a timely and procedurally proper claim of ineffective assistance of counsel.[22] Now that she has passed that threshold, the Court assesses trial counsel's performance under *Strickland*'s two-prong test below.

### A. Trial Counsel's Representation Fell Below an Objective Standard of Reasonableness.

At the time of Ms. Wright's trial, it was (and remains) clear that under Delaware law, a defendant is entitled, upon request, to a specific jury instruction regarding an alibi defense if "there is some credible evidence showing that the defendant was elsewhere when the crime occurred."[23] The Delaware Supreme Court has defined "some credible evidence" as evidence "capable of being believed," including sworn testimony.[24] And, not long ago, our Supreme Court observed in *Brown v. State* that "[a]n alibi instruction is required so that a jury does not make a determination of guilt based on the 'failure of the defense rather than because the evidence introduced by the

---

[21] *See Gattis v. State*, 697 A.2d 1174, 1178 (Del. 1997) (emphasis added).
[22] Super. Ct. Crim. R. 61(i).
[23] *Gardner v. State*, 397 A.2d 1372, 1374 (Del. 1979).
[24] *Brown v. State*, 958 A.2d 833, 838 (Del. 2008).

[State] ha[s] satisfied the jury of the defendant's guilt beyond a reasonable doubt.'"[25]

Based on the evidence presented at trial, the Court finds that Ms. Wright presented conceivable, albeit far from airtight, evidence by sworn testimony that she was somewhere other than at the location of the shooting. As mentioned, Ms. Wright testified that she remembered "clear as a bell" being at the "corner store" at the time of the homicide. Although this testimony stood in contrast to her initial account of the events, where she told police she was high on drugs and could not recall the day of the shooting,[26] Ms. Wright explained away her previous statement by claiming that she did not want to talk to police without a lawyer present.[27] Indeed, the alibi evidence was of such a quality that the jury passed a note that read, "was there any verification of defendant's alibi, corner store?"[28]

The State does not dispute that Ms. Wright offered alibi evidence for the day of the shooting, but, nevertheless, argues that trial counsel reasonably

---

[25] *Id.* at 839 (quoting *Rogers v. Redman*, 457 F.Supp. 929, 934 (D. Del. 1978)).
[26] D.I. 84 (App. to Def.'s Mot.) at A705-06.
[27] *Id.*
[28] *Wright*, 2019 WL 2417520, at *4. On the same note, the jury also asked: 1) "How far away was *[sic]* security camera from the truck?"; 2) "Was there ever a height and weight determined for [Latasha Brown]?"; and 3) "Was Mr. Mays' wallet ever recovered?" D.I. 84 at A790-91. After conferral with the parties outside the presence of the jury, this Court responded: "The record evidence is closed and no further evidence will be presented for your consideration. You should … collectively consider all of the evidence that was presented during the trial. Alright?" *Id.* at A791.

9

chose not to request an alibi instruction.[29]  The Court disagrees.  At the outset, the Court notes that Ms. Wright's trial counsel filed a four-sentence affidavit in which he states, in conclusory fashion, that arguing an alibi defense to the jury "may have weakened the primary defense strategy."[30]  This strategy, according to counsel, was to cast "reasonable doubt based on lack of reliable identification of [Ms. Wright] as the suspect."[31]  But the Court cannot see, and trial counsel makes no effort to explain, *why* an alibi instruction would have weakened the identification defense.[32]

Time and time again, the Delaware Supreme Court has emphasized the fundamental concepts that a defendant is innocent until proven guilty and the State bears the burden of proving guilt beyond a reasonable doubt.[33]  When alibi evidence is presented, it is imperative that the jury knows the burden of proof does not shift to the defendant and that the defendant need not prove her alibi to any extent.  To ensure proper jury deliberation, the jury must be told

---

[29] D.I. 86.

[30] D.I. 87.

[31] *Id.*

[32] In *State v. Kellum*, this Court considered an issue similar to the present matter.  *See State v. Kellum*, 2010 WL 2029059 (Del. Super. May 19, 2010).  Although the Court did not view *Kellum* through the *Strickland* lens for ineffective assistance and largely confined its analysis to whether Kellum was prejudiced when the trial judge did not *sua sponte* give an alibi instruction, the *Kellum* Court ultimately concluded that trial counsel's failure to request the instruction was reasonable "because as a matter of trial tactics, the defendant's attorney may not wish to request an alibi instruction in particular instances … such as when it would tend to concentrate attention upon this defense and divert consideration from unrelated weaknesses in the State's case."  *See Kellum*, 2010 WL 2029059, at *9.  Here, however, trial counsel has failed to explain why an alibi instruction would "divert consideration from unrelated weaknesses in the State's case."  *Id.*

[33] *See, e.g., Jackson v. State*, 374 A.2d 1 (Del. 1977); *Gardner*, 397 A.2d 1372; *Brown*, 958 A.2d 833.

that "[i]f the evidence … [of alibi] raises in your mind a reasonable doubt as to the defendant's guilt, you must give [the defendant] the benefit of the doubt and return a verdict of not guilty."[34]

The entitlement to the alibi instruction, of course, does not ineluctably imply that trial counsel was derelict for not wanting it. Here, however, trial counsel's failure to request the instruction meant the jury was left free to assume that Ms. Wright bore the burden of proving alibi for the shooting, in direct contravention of Delaware law and in violation of her substantial rights.[35]

Hence, based on trial counsel's self-assessment, the evidence presented at trial, and prevailing Delaware law, the Court finds that Ms. Wright has met the first prong of *Strickland* with regard to trial counsel's failure to request a jury instruction on alibi. Ultimately, Ms. Wright's sworn testimony was that she was somewhere else when the homicide occurred. It follows, then, that in light of the importance placed on an alibi instruction in Delaware law, the Court cannot "envision an advantage which could have been gained by withholding a request for the instruction[]" in this case.[36]

---

[34] *Brown*, 958 A.2d at 839 (Del. 2008).

[35] *Smith*, 991 A.2d at 1178.

[36] *See Smith v. State*, 991 A.2d 1169, 1176 (Del. 2010) (finding trial counsel's failure to request specific instruction on accomplice testimony amounted to "deficient performance" under the first prong of *Strickland*).

11

**B. Ms. Wright Was Not Prejudiced By Trial Counsel's Failure to Request the Alibi Instruction.**

*i. The Evidence Against Ms. Wright*

Because trial counsel was deficient in failing to request an alibi instruction, the Court now turns to the separate issue of ultimate trial prejudice. As noted above, the Court will only grant postconviction relief if it finds that, but for counsel's deficient performance, there is a reasonable probability the result of the proceeding would have been different.[37] When evaluating whether Ms. Wright was prejudiced by the omission of the alibi instruction, the Court must consider the totality of the evidence before the jury.[38] And, in this case, the evidence overwhelmingly established Ms. Wright as Mr. Mays's murderer.[39]

By way of review, on January 17, 2017, Lisa Mitchell arranged to buy drugs from Mr. Mays outside of her apartment.[40] But, as Ralph Mitchell testified, Ms. Mitchell and Ms. Wright set up the drug deal to rob Mr. Mays of pills and money.[41] When Mr. Mays arrived in a pick-up truck, Ms. Mitchell approached his vehicle and paid for the drugs on the driver's side of the car.[42]

---

[37] *Albury*, 551 A.2d at 58.

[38] *Strickland*, 466 U.S. at 695.

[39] *See Wright*, 2019 WL 2417520, at *4 ("The jury heard from several witnesses who said they saw Wright shoot Mays, or provided corroborating, circumstantial evidence, including witnesses who knew Wright and identified her as the person on the surveillance video…."). It bears mention that the Delaware Supreme Court also evaluated this Court's not giving an alibi instruction *sua sponte*, as contemplated by *Jackson*, on behalf of Ms. Wright. After analyzing the record evidence and given jury instructions, the Supreme Court concluded that "[b]ased on a careful review of the record, … the Superior Court did not commit plain error by failing, *sua sponte*, to issue an alibi instruction." *Id.*

[40] D.I. 84 at A511-12.

[41] *Id.* at A543.

[42] *Id.* at A516; A546.

As she did so, Ms. Mitchell testified that Ms. Wright approached the vehicle from the passenger's side and shot and killed Mr. Mays.[43] Ms. Wright's former boyfriend, Tyrell Simpson, testified that after the homicide, Ms. Wright called him and told him she shot someone.[44] He also testified that he overheard Ms. Wright planning the robbery and that she admitted to opening the door of Mr. Mays's truck and shooting him.[45]

When police arrested Ms. Wright, she was wearing a sweatshirt that appeared to be the same sweatshirt worn by Mr. Mays's shooter in surveillance footage.[46] The cuff of the sweatshirt ultimately tested positive for gunshot residue.[47] Then, Ms. Wright's cellmate in prison, Doneisha Martin, testified that: (1) she overheard Ms. Wright admit to shooting Mr. Mays for Percocet pills; and (2) while in prison, Ms. Wright boasted that she was going to beat her charges.[48]

Before offering the corner store alibi, Ms. Wright presented no explanation of her whereabouts at the time of Mr. Mays's murder.[49] The first time she

---

[43] *Id.*
[44] *Id.* at A491.
[45] *Id.* at A492-95.
[46] *Id.* at A441-43.
[47] *Id.*
[48] *Id.* at A465-66.
[49] *Id.* at A702.

mentioned her alibi was at trial on cross examination, and, as the jury heard, it directly contradicted her initial statement given to police:

> I take Xannies and Percocets. I cannot tell you nothing about [the day of the shooting], the day before. Once I get high, I don't know nothing. . . . Like I'm telling you that [on the day of the shooting], I don't remember anything. And the day before, I [got] high. Like, I take Xannies. Like, I really got ripped on Xannies. Like, I don't remember anything.[50]

Ms. Wright failed to provide additional details about the corner store she visited at the time of the shooting. And, most importantly, there was no corroboration of her alibi at trial.[51]

Thus, to the extent Ms. Wright's seemingly on-the-spot alibi was considered, the Court is confident it did not weaken the State's case. And to the extent Ms. Wright claims the giving of an alibi instruction would have moved the needle in her favor at trial, that argument is rejected. Viewed cumulatively with the other evidence, the Court is satisfied that trial counsel's failure to request the instruction did not constitute prejudice to Ms. Wright sufficient to merit postconviction relief.

### ii. The Identification Instruction

---

[50] *Id.* at A783.
[51] *See id.* at A702.

14

Moreover, from a procedural standpoint, the Court finds that the jury instruction on identification, coupled with the entirety of the instructions, remedied any potential issue with the jury's consideration of Ms. Wright's alibi. As the Court instructed:

> An issue in this case is the identification of the defendant. To find the defendant guilty, you must be satisfied, beyond a reasonable doubt, that the defendant has been accurately identified, that the wrongful conduct charged in this case actually took place, *and that the defendant was in fact the person who committed the act.* If there is any reasonable doubt about the identification of the defendant, you must give the benefit of such doubt and find the defendant not guilty.[52]

An alibi instruction, if given, likely would have stated as follows:

> The defendant has raised the defense of alibi to the charge of Murder in the First Degree. The defendant contends that, when the crime was allegedly committed, [she] was somewhere other than the place where the crime was allegedly committed. If the evidence on this defense raises a reasonable doubt as to the defendant's guilt, you must give [her] the benefit of that doubt and find the defendant not guilty.[53]

Both instructions inform the jury that it must be satisfied that Ms. Wright was guilty beyond a reasonable doubt. The Court is satisfied that this

---

[52] *Id.* at A827 (emphasis added).
[53] Super. Ct. Crim. Pattern Jury Instr. 5.61 (2022).

similarity demonstrates Ms. Wright suffered no prejudice from the Court's giving of an identification instruction rather than an alibi instruction.

Undoubtably, one purpose of giving an alibi instruction can be to advise the jury that it is not a defendant's burden to prove alibi. In this case, however, the identification instruction given militates in favor of a determination that there is no reasonable probability the omission of an alibi instruction, containing essentially the same information, affected the outcome of the trial.[54] The difference in wording between these instructions, insofar as the facts of this particular case are concerned, is negligible.

---

[54] *See Kellum*, 2010 WL 2029059, at *8.

## CONCLUSION

The Court, in closing, understands that trial counsel's performance was far from perfect.  But *Strickland* necessarily implicates Ms. Wright's burden to prove there exists a reasonable probability the jury would have acquitted her if trial counsel had requested an alibi instruction.  Based on the foregoing, she has failed to satisfy that burden.  Her convictions will stand.  Her motion is **DENIED**.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge

Original to Prothonotary (Criminal Division)

Cc: Patrick Collins, *Esquire*

Sean Lugg, DAG