The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: <u>March 21, 2023</u>

**No. A-1-CA-39984**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.

**JASON STALTER,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Court Judge**

Raúl Torrez, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Mark A. Peralta-Silva, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**OPINION**

**WRAY, Judge.**

{1}     Defendant Jason Stalter appeals his convictions for larceny over $20,000, contrary to NMSA 1978, Section 30-16-1 (2006), and burglary, contrary to NMSA 1978, Section 30-16-3 (1971), in connection with money stolen from the Lowe's Home Improvement (Lowe's) store in Farmington, New Mexico on December 2, 2017 (the incident). At trial, Defendant presented alibi evidence and requested the uniform jury instruction on alibi, UJI 14-5150 NMRA. The district court denied the jury instruction based on the direction in the accompanying use note (Use Note). On appeal, Defendant challenges the denial of the alibi jury instruction as well as the admission, exclusion, and sufficiency of the evidence. We affirm but express our rationale for our reservations related to the Use Note's categorical prohibition of the alibi instruction. *See State v. Wilson*, 1994-NMSC-009, ¶ 6, 116 N.M. 793, 867 P.2d 1175 (encouraging this Court to "express its rationale for any reservations it might harbor over Supreme Court precedent").

**BACKGROUND**

{2}     Defendant worked at Lowe's as an overnight department manager but was fired on November 30, 2017, two days before the incident. As a department manager, Defendant had keys to enter the store and a code to disarm the alarm system. Defendant testified that he returned his keys on the day he was fired, and Lowe's

security personnel, Elizabeth Nickel, testified that all the keys were accounted for the following day and that Defendant's code had been deactivated. Video surveillance from December 2, 2017, at 10:40 p.m. (incident footage), showed that an individual "wearing all black" used a key to enter Lowe's through the front doors, disabled the alarm system, went into to the "cash office," unlocked a code-protected safe, took cash from the safe, and left the store in a little over two minutes.

{3}     Nickel received a call around 5:00 a.m., informing her of the theft. When she arrived at the store, she ensured that the police were called and reviewed the incident footage. Officer Flores was the responding officer. He first spoke to the store manager, who conveyed his suspicion that Defendant was the person in the incident footage. Officer Flores next investigated the area for evidence and received a copy of the incident footage from Nickel. Nickel also suspected Defendant had taken the money and provided Officer Flores with additional video footage of Defendant from his time working at Lowe's (workplace footage). Shortly thereafter, Detective Rock took over the investigation.

{4}     Defendant maintained throughout the investigation and trial that he could not have stolen from the Lowe's in Farmington on December 2, 2017, because he was visiting friends in Cedar City, Utah. According to Defendant, from December 1, 2017, through December 4, 2017, he visited and stayed with his friend, Wayne Majeski and Wayne's husband, Secondo Docimo. Before trial, the district court

2

agreed to admit into evidence Docimo's preliminary examination testimony but during trial reversed that ruling. As a result, only Defendant and Majeski testified at trial that Defendant was in Cedar City, Utah at the time of the incident. In order to establish a timeline for the alibi, Defendant offered receipts and copies of his bank and phone records. One receipt indicated that Defendant purchased dinner from a restaurant in Cedar City, Utah at 6:15 p.m. on December 2, 2017. Defendant argued that it would have been impossible for him to have the time to return to Farmington, New Mexico by 10:40 p.m., when the incident took place. The evidence at trial confirmed that it would take over six hours to drive from Cedar City to Farmington.

{5}     For over an hour at trial, the State showed multiple videos and screenshots of the incident and workplace footage. Nickel testified about her interpretation of the videos and screenshots, identified Defendant in the workplace footage, and gave her opinion that Defendant was the person in black in the incident footage. According to Nickel, she concluded that Defendant was the person in black after reviewing the incident footage and further confirmed this conclusion when she reviewed the workplace footage of Defendant next to the incident footage.

{6}     During trial, Defendant requested that the district court give the uniform alibi jury instruction. *See* UJI 14-5150. Defendant argued that the State appeared to be shifting the burden to Defendant to prove his alibi and that the uniform instruction would clarify and prevent any burden shifting. The State maintained that the

accompanying Use Note to UJI 14-5150 "says no instruction on this subject shall be given, period, it doesn't say except in certain circumstances" and that the alibi instruction was not necessary to explain the burdens, because the elements instruction required the State to prove that Defendant was present for both offenses. The district court denied the alibi instruction, based on the accompanying Use Note, which states, "No instruction on this subject shall be given." *See* UJI 14-5150 use note. The State's closing argument criticized Defendant's alibi evidence as inconsistent and not credible and culminated with the assertion that "the only way he's not guilty is if you believe him and Mr. Majeski."

{7}     The jury found Defendant guilty on both Count I, larceny over $20,000, and Count II, burglary. At sentencing, the district court ordered Defendant to pay restitution in the amount of $33,040.83 and sentenced Defendant to nine years' incarceration. Defendant appeals the convictions and sentence.

**DISCUSSION**

{8}     Defendant makes three arguments on appeal: (1) he was entitled to have the district court give the requested uniform alibi instruction; (2) Docimo's preliminary hearing testimony was improperly excluded at trial and Nickel's identification testimony was improperly admitted; and (3) the State failed to present evidence as to the amount stolen that was sufficient to support the conviction and the restitution order. We begin our analysis with the alibi instruction.

4

## I.   The Alibi Instruction

{9}   New Mexico's uniform alibi jury instruction states as follows:

> Evidence has been presented concerning whether or not the defendant was present at the time and place of the commission of the offense charged. If, after a consideration of all the evidence, you have reasonable doubt that the defendant was present at the time the crime was committed, you must find him not guilty.

UJI 14-5150. The accompanying Use Note expressly states, "No instruction on this subject shall be given." The committee commentary provides the following explanation:

> The language of this instruction is derived from California Jury Instructions Criminal, 4.50. The New Mexico Supreme Court has held that the defendant's alibi is a question for the jury. The [C]ourt has also held that it is improper to instruct that the burden is on the defendant to prove his alibi. There are no New Mexico decisions holding that the jury must be instructed on the question of alibi. Analytically, an alibi is not a technical or "legal" defense but it is used to cast doubt on the proof of elements of the crime. Consequently, the committee believed that no instruction on alibi should be given since it merely comments on the evidence.

UJI 14-5150, comm. cmt. (citations omitted). Defendant contends that despite the Use Note and commentary, the requested alibi instruction was (1) warranted because the evidence supported an alibi, and (2) necessary to avoid juror confusion. Defendant has not challenged the text of the jury instruction. At oral argument, however, the State maintained that giving UJI 14-5150 in the present case would not have cured any error because the instruction does not clarify the burden of proof with respect to alibi and suggested that the jury instruction approved by the Fourth

5

Circuit Court of Appeals is more comprehensive and appropriate under the circumstances. *See Frye v. Procunier*, 746 F.2d 1011, 1012-13 (4th Cir. 1984).

{10} The parties' arguments raise significant questions. We cannot, however, avoid the threshold question of this Court's authority to reject jury instructions and use notes. While committee commentary is not binding, *State v. Barber*, 2004-NMSC-019, ¶ 10 n.1, 135 N.M. 621, 92 P.3d 633, use notes are binding and in particular, are "binding on district courts," *Delfino v. Griffo*, 2011-NMSC-015, ¶ 19, 150 N.M. 97, 257 P.3d 917. Indeed, our Supreme Court has equated UJI 14-5150 with the Use Note. *See State v. McGuire*, 1990-NMSC-067, ¶ 31, 110 N.M. 304, 795 P.2d 996 (noting that "the uniform jury instruction on this topic provides that no instruction shall be given"). Defendant's arguments would require us to reject the Use Note. This Court may only "amend, modify, or abolish" a uniform jury instruction if it has not been "reviewed and ruled upon" by our Supreme Court. *Wilson*, 1994-NMSC-009, ¶ 6; *see also State v. Parish*, 1994-NMSC-073, ¶ 24, 118 N.M. 39, 878 P.2d 988 ("The only restriction is that if there exists precedent from [our Supreme] Court that specifically addresses the validity of a Uniform Jury Instruction, the Court of Appeals may not overrule that precedent nor alter or reject that instruction." (alterations, internal quotation marks, and citation omitted)). Our Supreme Court has "sustain[ed]" and "reaffirm[ed]" the Use Note at issue. *See State v. Robinson*, 1980-NMSC-049, ¶ 31, 94 N.M. 693, 616 P.2d 406 (referring to the alibi instruction as

6

N.M.U.J.I.Crim. 41.30 (current version at UJI 14-5150)). *But see McGuire*, 1990-NMSC-067, ¶ 31 (affirming the denial of the alibi uniform jury instruction absent "considerations contrary to" the analysis in the committee commentary). Accordingly, we are bound by *Robinson* and precluded from overruling the Use Note. *See Wilson*, 1994-NMSC-009, ¶ 4 ("[T]he Court of Appeals is *not* precluded from considering error in jury instructions, but is precluded only from overruling those instructions that have been considered by [our Supreme] Court in actual cases and controversies that are controlling precedent."). We therefore can discern no error in the district court's denial of the alibi instruction.

{11}   Nevertheless, our Supreme Court has encouraged this Court "to express its rationale for any reservations it might harbor over Supreme Court precedent." *Id.* ¶ 6. The Use Note appears to limit both the district court's general authority to consider the circumstances of the case when deciding to instruct the jury on alibi and this Court's application of the standard of review for preserved challenges to the denial of an instruction. Our Supreme Court has broadly approved the district court's "authority to disregard uniform jury instructions in cases in which under the facts or circumstances of the particular case the published instruction is erroneous or otherwise improper, and the [district] court so finds and states of record its reasons." *Id.* ¶ 4 (alteration, internal quotation marks, and citation omitted). This is in line with the district court's duty "to properly instruct the jury on the law." *See* UJI Crim. Gen.

NMRA use note (instructing the district court both that "[n]o instruction shall be given on a subject which a use note directs that no instruction be given" and that "[t]o avoid fundamental error, it is the duty of the court to properly instruct the jury on the law"). But that discretion to alleviate juror confusion is countermanded by the Use Note's direction that "[n]o instruction on this subject *shall* be given." UJI 14-5150 use note (emphasis added).

{12}     The district court's mandatory compliance with the Use Note further prevents this Court from meaningfully applying the standard of review for preserved jury instruction error. We generally review whether reversible error resulted from juror confusion or misdirection, *see State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134, and in our de novo review, we consider "the evidence in the light most favorable to the giving of the requested instructions," *State v. Skippings*, 2011-NMSC-021, ¶ 10, 150 N.M. 216, 258 P.3d 1008 (alteration, internal quotation marks, and citation omitted). In the context of use notes, our courts have concluded that error resulting from the failure to follow mandatory use notes does not automatically result in reversal. *See Barber*, 2004-NMSC-019, ¶ 20 (agreeing generally that the failure to give a definitional instruction that is mandated by a use note is not fundamental error); *State v. Dominguez*, 2014-NMCA-064, ¶ 18, 327 P.3d 1092 (stating that the "failure to give a mandatory instruction" does not "automatically" require the "reversal or modification of an otherwise valid

8

conviction," but rather, "it is the failure to give a mandatory instruction on the law essential for a conviction that constitutes reversible error"). But here, our Supreme Court has adopted and approved a categorical directive not to give UJI 14-5150.[1] Thus, the district court has no discretion to give the instruction and consequently, this Court has no role on review.

{13}    While we are bound by the restrictions that are outlined in *Wilson* and solidified as to UJI 14-5150 in *Robinson*, we are keenly aware of the tension between these restrictions and the role that each court plays to safeguard the rights of New Mexicans. This tension is heightened by both the significant case law that has developed across the country addressing alibi instructions and the particular circumstances of this case. For these reasons, as encouraged by our Supreme Court in *Wilson*, we offer our analysis in this regard. We first review the national landscape of alibi law as it relates to jury instructions, and in that context, further (1) evaluate the State's arguments in support of both the Use Note and the committee

---

[1]UJI 14-5150 is not the only uniform instruction accompanied by a mandatory use note directing that no instruction be given. *See, e.g.*, UJI 14-2823 NMRA use note (accessories to crimes); UJI 14-5024 NMRA use note (weighing conflicting testimony); UJI 14-5030 NMRA use note (flight); UJI 14-5140 NMRA use note (excusable homicide). At oral argument, Defendant pointed out that our uniform instructions include approximately thirty such use notes. We limit our discussion, however, to the instruction at hand, and we have not considered the propriety of any other instruction and use note.

commentary; and (2) consider whether denying the instruction in the present circumstances created an untenable risk of juror confusion or misdirection.

## A. The Majority and Minority Approaches to Alibi Instructions

{14} The law of alibi instructions went through a remarkable shift in the last century and a half. The early cases often involved defendants seeking reversal because a prejudicial alibi instruction was given. *See, e.g.*, *State v. Taylor*, 24 S.W. 449, 456 (Mo. 1893) (reversing based on an instruction that shifted the burden of proof); *State v. McClellan*, 59 P. 924, 924-26 (Mont. 1900) (concluding an instruction that shifted the burden of proof was "radically wrong"); *State v. Johnson*, 17 N.W.2d 345, 346 (S.D. 1945) ("The courts generally hold that an instruction which advises the jury that an unsuccessful attempt to prove an alibi is a circumstance to be weighed against the defendant on the question of the sufficiency of the evidence to prove defendant's guilt beyond a reasonable doubt, is erroneous and prejudicial."). In later years, the arguments shifted to whether an instruction was required to ensure that juries understood the burdens of proof. *See, e.g.*, *Ferguson v. State*, 488 P.2d 1032, 1038 (Alaska 1971) ("[W]ithout proper instruction the jury might erroneously believe that the defendant has the burden of proving alibi."); *State v. Hunt*, 197 S.E.2d 513, 518 (N.C. 1973) ("Notwithstanding the court's instruction that the burden of proof is on the [s]tate to satisfy the jury from the evidence beyond a reasonable doubt that the defendant was present and that [the defendant] committed

the crime, if a particular defendant is apprehensive that the jury will be misled unless the court gives an instruction . . . [the defendant] will be entitled to such instruction [u]pon special request therefor."); *Commonwealth v. Mikell*, 729 A.2d 566, 570 (Pa. 1999) ("Where such evidence has been introduced, a defendant is entitled to an alibi instruction to alleviate the danger that the jurors might impermissibly view a failure to prove the defense as a sign of the defendant's guilt."). Different jurisdictions define alibi slightly differently or require different amounts of evidence to justify an instruction. *See, e.g.*, *Greenhow v. United States*, 490 A.2d 1130, 1134 (D.C. 1985) (requiring alibi evidence to "be of such a character that, if believed, it would show that the defendant could not have committed the crime"); *Dixon v. State*, 227 So. 2d 740, 742-43 (Fla. Dist. Ct. App. 1969) (requiring less than "absolute impossibility" to establish an alibi). These complexities—the changing contexts for alibi instructions and distinctions between alibi analyses—make discussing trends difficult because the nuances complicate broad statements about the law. Nevertheless, our review leads us to conclude that most jurisdictions permit the district courts to exercise some discretion about whether to give an alibi instruction.

{15}    New Mexico's categorical denial of an alibi instruction is the minority approach among state and federal jurisdictions. Most other jurisdictions offer a defendant the opportunity for an alibi instruction either by uniform instruction or

11

special submission of the parties.[2] In most offering jurisdictions, a defendant must request the alibi instruction and provide a level of evidentiary showing to support

_____

[2] These jurisdictions are Alabama, *see* Alabama Pattern Jury Instructions: Criminal, Non-Statutory Special Instructions, Alibi (approved April 15, 2016) (currently found at https://judicial.alabama.gov/docs/library/docs/alibi.pdf); Alaska, *see* Alaska Criminal Pattern Jury Instruction 1.40 (Revised 1999), AK-JICRIM 1.40 (West); Arizona, *see* RAJI (Criminal) 5th, No. 46 (2019); California, *see* CALCRIM No. 3400 *and* Cal. Jury Instructions--Criminal CALJIC 4.50; Connecticut, *see* Conn. Criminal Jury Instructions § 2.7-2 (Nov. 2021), available at https://jud.ct.gov/JI/Criminal/Criminal.pdf; Delaware, *see* Del. P.J.I. Crim. § 5.61; District of Columbia (D.C.), *see* 1 Barbara E. Bergman, Criminal Jury Instructions for the District of Columbia § 9.200 (Matthew Bender, Rev. Ed.), available by request, filed herein as part of this Court's Supplemental Record Proper (SRP) at 0001-7; Florida, *see* Fla. Std. Jury Instr. (Crim.) 3.6(i), JICRIM FL-CLE 3-1, 3.6(i) (West); Georgia, *see* Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 3.30.10 (4th ed. 2022), GAJICRIM 3.30.10 (West); Hawai'i, *see* Hawai'i Pattern Jury Instructions--Criminal 7.14, HI R CR JURY Instr. 7.14 (West); Iowa, *see* Iowa State Bar Ass'n, *Criminal Jury Instructions* § 200.15 (2022), available by request, SRP at 008-09; Maryland, *see* MD-JICRIM 5:00; Massachusetts, *see* Instruction 9.120 of the Criminal Model Jury Instructions for Use in the District Court (2009), MJ MA-CLE 9.100 (West); Michigan, *see* MI-MJICRIM 7.4 (Lack of Presence (Alibi)), MI-MJICRIM 7.8 (Identification); Mississippi, *see* Miss. Prac. Model Jury Instr., Crim. § 2:1 (2d ed.) *and* Miss. Plain Lang. Model Jury Instr. Crim. 500; Missouri, *see* 27 Mo. Prac., Criminal Practice Forms § 9.33 (2d ed.), available by request, SRP at 0018-21; Montana, *see* MCJI 2-119, available at https://courts.mt.gov/Courts/boards/CriminalJuryInstructionsCommission (select Ch. 2); Nebraska, *see* 1 Neb. Prac., NJI2d Crim. 8.1 (2016-2017 ed.); Nevada, *see* *Duckett v. State*, 752 P.2d 752, 754 (Nev. 1988); New Hampshire, *see* N.H. Criminal Jury Instructions 3.02 (1985), available at https://nhba.s3.amazonaws.com/wp-content/uploads/2020/07/14150407/NH-Criminal-Jury-Instructions-1985.pdf; New Jersey, *see* New Jersey Model Jury Charges (Criminal), "Alibi (Non 2C)" (rev. May 12, 2018), NJ-JICRIM Non 2C Charges (West); New York, *see* CJI2D(NY) GA 21–Alibi *and* 1 Charges to Jury & Requests to Charge in Crim. Case in N.Y. §§ 5:7-:9 (Oct. 2022 update); North Carolina, *see* N.C.P.I.-Crim. 301.10 (2003); North Dakota, *see* N.D. Jury Instructions - Criminal, K 3.05 Alibi (2022 ed.), available at https://www.sband.org/page/pattern_jury_instruc; Ohio, *see* 2 Ohio Jury Instructions § 421.03, 2 OJI-CR 421.03 (West); Oklahoma, *see* VRN-OKFORM OUJI-CR 8-57;

Oregon, *see* Uniform Criminal Jury Instruction 1101, OR-JICRIM 1101 (West); Pennsylvania, *see* PA-JICRIM 3.11; South Carolina, *see* Anderson's S.C. Requests to Charge - Criminal § 6-19 (2d ed. 2012), SC-JICRIM 6-19; South Dakota, *see* S.D. Pattern Jury Instructions (Criminal) 2-1-1 (rev. 2020), available on request, SRP at 0022-23; Tennessee, *see* 7 T.P.I.-Crim. 42.13 (2022), TNPRACJICR 42.13 (West); Utah, *see State v. Hanna*, 21 P.2d 537, 539 (1933), *but see State v. Lynch*, 2011 UT App 1, 246 P.3d 525; Vermont, *see* Vt. Model Criminal Jury Instructions § 9-011 (2005), available at https://www.vtjuryinstructions.org/criminal/MS09-011.htm (last visited Jan. 30, 2023) *and* § 9-021 (2010), available at https://www.vtjuryinstructions.org/criminal/MS09-021.htm (last visited Jan. 30, 2023); Virginia, *see* Va. Prac. Jury Instruction §§ 65:1 to -:3, VAPRAC JI 65:1-:3 (West); West Virginia, *see* Public Defender's Services, *West Virginia's Criminal Jury Instructions*, 8.1 (7th ed.), available at https://pds.wv.gov/attorney-and-staff-resources/research-center/legal-resources/Documents/Jury%20Instructions%207th%20Edicition.pdf; and Wisconsin, *see* WIS JI-CRIMINAL JI-775. Additionally, the federal circuit courts of appeal have all adopted or affirmed some form of alibi instruction. *See* Comm. on Pattern Crim. Jury Instructions 1st Cir., 5.01, available at https://www.mad.uscourts.gov/resources/pattern2003; *United States v. Burse*, 531 F.2d 1151, 1152-54 (2d Cir. 1976); Comm. on Model Crim. Jury Instructions 3d Cir., 8.02 (2021), available at https://www.ca3.uscourts.gov/sites/ca3/files/2021%20Chapter%208%20for%20posting%20final.pdf; *Frye*, 746 F.2d at 1012-14 (4th Cir.); Comm. on Pattern Jury Instructions Dist. Judges Ass'n 5th Cir., 1.37, Alibi (2019), available at https://www.lb5.uscourts.gov/juryinstructions/fifth/crim2015.pdf; Sixth Circuit Comm. on Pattern Crim. Jury Instructions, 6.02 (2021), available at https://www.ca6.uscourts.gov/sites/ca6/files/documents/pattern_jury/pdf/Chapter%206_1.pdf; Comm. on Fed. Crim. Jury Instructions of the 7th Cir., 6.03 (2022), available at https://www.ca7.uscourts.gov/pattern-jury-instructions/pattern_criminal_jury_instructions_2020edition.pdf; Comm. on Model Jury Instructions for the District Courts of the 8th Cir., 9.07 (2021), available at https://juryinstructions.ca8.uscourts.gov/instructions/criminal/CriminalJuryInstructions.pdf; 9th Cir. Crim. Jury Instr. 5.1 (2022), available at https://www.ce9.uscourts.gov/jury-instructions/node/865; Crim. Pattern Jury Instruction Comm. for the 10th Cir., 1.35 (2021), available at https://www.ca10.uscourts.gov/sites/ca10/files/documents/downloads/Jury%20Instructions%202021%20Version.pdf; Eleventh Circuit Pattern Jury Instructions, Criminal Cases, S14 (2016); available at https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCriminalPatternJ

the alibi.[3] Some offering jurisdictions go so far as to suggest or place a sua sponte duty on the district court to instruct on the subject of alibi when the evidence supports the instruction. [4] Many jurisdictions—including offering jurisdictions—also

uryInstructionsRevisedMAR2022.pdf; *United States v. Alston*, 551 F.2d 315, 319 (D.C. Cir. 1976).

[3]*See Ex parte Brown*, 812 So. 2d 305, 307 (Ala. 2001); *Ferguson v. State*, 488 P.2d 1032, 1038-39 (Alaska 1971); *State v Rodriguez*, 961 P.2d 1006, 1011 (Ariz. 1998) (en banc); *People v. Whitson*, 154 P.2d 867, 872 (Cal. 1944); *State v. Butler*, 543 A.2d 270, 276 (Conn. 1988); *Brown v. State*, 958 A.2d 833, 834 (Del. 2008); *Henderson v. United States*, 619 A.2d 16, 19 (D.C. 1992); *Truett v. State*, 105 So. 3d 656, 660 (Fla. Dist. Ct. App. 2013); *Henderson v. State*, 252 S.E.2d 83, 84 (Ga. Ct. App. 1979); *State v. Holm*, 478 P.2d 284, 288 n.9 (Idaho 1970); *Smith v. State*, 486 A.2d 196, 198 (Md. 1985); *Commonwealth v. Medina*, 404 N.E.2d 1228, 1237 (Mass. 1980); *People v. McGinnis*, 262 N.W.2d 669, 671 (Mich. 1978); *State v. Taylor*, 24 S.W. 449, 454 (Mo. 1893); *Duckett*, 752 P.2d at 754; *State v. Dale*, 770 A.2d 1111, 1113-14 (N.H. 2001); *State v. Echols*, 972 A.2d 1091, 1102 (N.J. 2009); *People v. Vera*, 462 N.Y.S.2d 467, 468 (N.Y. App. Div. 1983); *State v. Kalmio*, 2014 ND 101, ¶ 41, 846 N.W.2d 752, 765; *State v. Mitchell*, 574 N.E.2d 573, 576 (Ohio Ct. App.1989); *Davis v. State*, 237 P. 471, 472 (Okla. Crim. App. 1925); *State v. Dudley*, 564 P.2d 711, 713 (Or. Ct. App. 1977); *Mikell*, 729 A.2d at 568, 570; *State v. Robbins*, 271 S.E.2d 319, 319-20 (S.C. 1980); S.D. Pattern Jury Instructions (Criminal) 2-1-1, available on request, SRP at 0022-23 ; *Poe v. State*, 370 S.W.2d 488, 489 (Tenn. 1963); *State v. Powers*, 47 A. 830, 832-33 (Vt. 1900); *Acord v. Hedrick*, 342 S.E.2d 120, 126 (W. Va. 1986); WIS JI-CRIMINAL JI-775; *United States v. Bryser*, 954 F.2d 79, 87 (2d Cir. 1992); *United States v. Hicks*, 748 F.2d 854, 857 (4th Cir. 1984) (citing the Sixth, Seventh, and Eighth Circuit Courts of Appeal); *United States v. Schmick*, 904 F.2d 936, 942-43 (5th Cir. 1990); *United States v. Lillard*, 354 F.3d 850, 855 (9th Cir. 2003); *cf. People v. Whitson*, 154 P.2d 867, 872 (Cal. 1944); *Hamlin v. State*, 2019-KA-00172-COA, ¶ 4, 306 So. 3d 843 (Miss. Ct. App. 2020); *State v. Moreno*, 422 N.W.2d 56, 61-62 (Neb. 1988); *State v. Green*, 151 S.E.2d 606, 608 (N.C. 1966).

[4]*See State v. Searles*, 197 A.2d 384, 386-87 (N.J. Super. Ct. App. Div. 1964); *Commonwealth v. Andrews*, 83 A. 412, 414 (Pa. 1912); *Commonwealth v. Smidl*, 577 A.2d 210, 213 (Pa. Super. Ct. 1990) (per curiam) (Johnson, J., dissenting) (explaining the majority opinion reversing a conviction where no sua sponte alibi instruction was given)); T.P.I.-Crim. 42.13, cmt. 1 (citing *Poe*, 370 S.W.2d at 489).

14

conclude that the denial of the instruction or an erroneous instruction is harmless, not reversible error, or otherwise not prejudicial.[5]

{16}    New Mexico's approach to the alibi instruction is in the minority.[6] Most of these minority jurisdictions recommend no alibi instruction for the same reasons set

---

[5] *See, e.g.*, *Dixon v. State*, 227 So. 2d 740, 743 (Fla. Dist. Ct. App. 1969); *Medina*, 404 N.E.2d at 1237 (Massachusetts); *People v. Matthews*, 413 N.W.2d 755, 756-57 (Mich. Ct. App. 1987); *State v. Rickman*, 920 S.W.2d 615, 618 (Mo. Ct. App. 1996) (finding no prejudice); *State v. Cobos*, 863 N.W.2d 833, 838 (Neb. Ct. App. 2015); *Duckett*, 752 P.2d at 754 (Nevada); *Echols*, 972 A.2d at 1103 (New Jersey); *People v. Merritt*, 698 N.Y.S.2d 735, 735, 265 A.D.2d 733, 734 (N.Y. App. Div. 1999) (nonprecedential); *State v. Hood*, 422 S.E.2d 679, 682 (N.C. 1992); *Mitchell*, 574 N.E.2d at 577 (Ohio); *Davis*, 237 P. at 473 (Oklahoma); *State v. Bardwell*, 2021 WI App 20, ¶¶ 16-19, 396 Wis. 2d 702, 958 N.W.2d 160 (per curiam) (unpublished disposition); *United States v. Burse*, 531 F.2d 1151, 1153 (2d Cir. 1976) (citing cases from the Second, Fifth, Seventh, and Eighth Circuit Courts of Appeal that held the failure to provide an alibi instruction does not automatically require reversal); *United States v. Simon*, 995 F.2d 1236, 1244 (3d Cir. 1993).

[6] The minority jurisdictions include Arkansas, *see* AMCI 2d 608, cmt., (Lexis) ("While alibi instructions have often been used by trial courts in Arkansas, alibi is neither a defense nor an affirmative defense under the Arkansas Criminal Code, but rather a position the defendant may assert to create a reasonable doubt of [their] guilt. Therefore, no jury instruction should be given."); Colorado, *see* Colo. Jury Instr., Criminal Ch. H cmt. 3 (2021); Illinois, *see* Committee Note to Illinois Pattern Jury Instructions, Criminal 24-25.05, IL-IPICRIM 24-25.05 (West) (explaining the committee decided to omit an alibi instruction because alibi is not an affirmative defense and the use of one would be a comment on the evidence); Indiana, *see* Ind. Pattern Jury Instructions-Crim. No. 10.21, IN-JICRIM 10.2000 (West) ("This instruction has been withdrawn."); Kansas, *see* KS-PIKCRIM 51.190 ("The Committee recommends that there be no separate instruction given as to alibi."); Kentucky, *see* 1 Cooper & Cetrulo, *Kentucky Instructions to Juries*, §§ 1.04(D), 1.09(D) (6th ed. 2021) (stating that no affirmative instruction on alibi is to be given [1.04(D)] explaining that it would result in a comment on the evidence and interfere with the jury's right to weigh the evidence [1.09(D)]), available by request, SRP at 010-17; Maine, *see* Alexander, *Maine Jury Instruction Manual*, § 6-7 cmt., §§ 6-14 to -16, § 6-55 cmt., §§ 6-107 to -112 (2022 ed.), available on request, SRP at 0025-

15

forth in our committee commentary, but some of the minority jurisdictions have nevertheless considered the alibi instruction a matter that is within the district court's discretion or affirmed giving the instruction. [7] Further, only a single other jurisdiction, Idaho, has drafted an alibi instruction in combination with a directive not to use it, like New Mexico. *See* ICJI 1502 Alibi Defense, cmt. Idaho, however, is among the minority jurisdictions that have also affirmed a district court's decision to give the instruction under certain circumstances. *See State v. Holm*, 478 P.2d 284, 288-89 (Idaho 1970).

{17}     Regardless of whether a jurisdiction is an offering or a minority jurisdiction, most have considered some or all of the points made by the committee commentary accompanying UJI 14-5150. On appeal, the State's arguments largely echo these

---

29 (directing that the jury only receive instructions on justification defenses provided in Me. Rev. Stat. Ann. 17-a, §§ 101-110 (West 2023), which omits alibi from justification defenses); Minnesota, *see* 10 Minn. Prac., Jury Instr. Guides-Criminal 7.08 (6th ed. 2022), CRIMJIG 7.08 (West) ("The Committee recommends no instruction."); Texas, *see* 22 Elizabeth Berry & George Gallagher, Texas Criminal Jury Charges § 3:390 (2021 ed.), TXJICRIM 3:390 (West) ("Alibi instructions are no longer required because the defensive issue of alibi constitutes no more than a negation of an essential element of the State's burden of proof." (emphasis omitted)); and Washington, *see* Wash. Prac., Pattern Jury Instr. Crim. 18.15 (5th ed. 2021), 11 WAPRAC WPIC 18.15 (West).

[7]*Decker v. State*, 499 S.W.2d 612, 616 (Ark. 1973); Ind. Judges Ass'n, Ind. Pattern Jury Instructions-Criminal 10.21 cmt., available on request, SRP at 031-33 (providing a jury instruction example "If an instruction on this topic is appropriate" despite the official instruction being withdrawn); *Remsen v. State*, 495 N.E.2d 184, 187 (Ind. 1986); *State v. Peters*, 656 P.2d 768, 769-70 (Kan. 1983) (finding it was not reversible error to give the alibi instruction); *State v. Landa*, 642 N.W.2d 720, 727 (Minn. 2002).

points. We therefore address the State's arguments primarily within the context of the committee commentary of UJI 14-5150.

**B.      The State's Arguments Against UJI 14-5150 and in Favor of Strict Application of the Use Note and Committee Commentary**

{18}      The State first adopts the committee commentary's two reasons not to give the instruction: (1) alibi is not an affirmative defense but only casts doubt on the elements of the crime; and (2) an instruction on alibi would "merely" be a "comment[] on the evidence." UJI 14-5150, comm. cmt. The State additionally argues that the jury did not need a specific alibi instruction and could simply apply its "common sense," because the district court sufficiently instructed the jury about the law. We disagree that this reasoning justifies what we fear is the ultimate result— restricting the district court's discretion to instruct on alibi in all circumstances.

{19}      In New Mexico an alibi is not an affirmative defense, but "an attempt to cast doubt on the proof of the elements of the crime." *McGuire*, 1990-NMSC-067, ¶ 31. Nearly every other jurisdiction that has addressed the matter has similarly concluded that alibi is not an affirmative defense, but also has allowed an alibi instruction under some circumstances.[8] As the Delaware Supreme Court explained,

---

[8]Like New Mexico, most jurisdictions that generally deny an alibi instruction rely at least in part on the conclusion that alibi is not an affirmative defense, including the following: Arkansas, *see Blaney v. State*, 657 S.W.2d 531, 533-34 (Ark. 1983) (comparing alibi to accident); Colorado, *see People v. Huckleberry*, 768 P.2d 1235, 1239 (Colo. 1989) (en banc); Illinois, *see People v. Poe*, 272 N.E.2d 28, 31-32 (Ill. 1971); Kansas, *see Peters*, 656 P.2d at 769-70; Kentucky, *see Parsley v.*

17

*Commonwealth*, 321 S.W.2d 259, 260 (Ky. Ct. App. 1958); Nebraska, *see State v. El-Tabech*, 405 N.W.2d 585, 593 (Neb. 1987); Texas, *see Giesberg v. State*, 984 S.W.2d 245, 248, 250 (Tex. Crim. App. 1998) (en banc); and Utah, *see Lynch*, 2011 UT App 1, ¶ 17. Many others, however, offer an alibi instruction even though those jurisdictions also conclude that alibi is not an affirmative defense, including: Alabama, *see Ragland v. State*, 192 So. 498, 501 (Ala. 1939) (noting alibi is not an affirmative defense); *Ex parte Brown*, 812 So. 2d at 307 (holding an alibi instruction should have been given); Alaska, *see Ferguson*, 488 P.2d at 1038-39; Arizona, *see Rodriguez*, 961 P.2d at 1011; California, *see People v. Freeman*, 149 Cal. Rptr 396, 398 (1978) (in bank) (noting alibi is not an affirmative defense); *People v. Seabourn*, 11 Cal. Rptr. 2d 641, 644-45 (Ct. App. 1992) (holding that giving the instruction was not error because the facts supported it); Connecticut, *see State v. Vasquez*, 36 A.3d 739, 748 (Conn. App. Ct. 2012); Delaware, *see Brown*, 958 A.2d at 839; District of Columbia, *see Gray v. United States*, 549 A.2d 347, 349 n.3 (D.C. 1988); Georgia, *see Rivers v. State*, 298 S.E.2d 10, 19-20 (Ga. 1982) (noting alibi is not an affirmative defense); *Henderson*, 252 S.E.2d at 84 (holding that it is reversible error not to give an alibi instruction when the evidence supports it); Hawai'i, *see State v. Gabrillo*, 877 P.2d 891, 894 (Haw. Ct. App. 1994) (noting that alibi is not an affirmative defense); Hawai'i Pattern Jury Instructions—Criminal 7.14, HI R CR JURY Instr. 7.14 (West); Maryland, *see Pulley v. State*, 382 A.2d 621, 624 (Md. Ct. Spec. App. 1978); Missouri, *see Taylor*, 24 S.W. at 454, 456 (noting that alibi is not an affirmative defense); *State v. Franklin*, 591 S.W.2d 12, 14 (Mo. Ct. App. 1979) (stating the rule that a defendant is entitled to an alibi instruction if requested and if the evidence is sufficient to raise a reasonable doubt about the defendant's presence); Montana, *see State v. McClellan*, 59 P. 924, 925 (Mont. 1900); MCJI 2-119, available at https://courts.mt.gov/Courts/boards/CriminalJuryInstructionsCommission (select "2022 Criminal Jury Instructions" and Chapter 2, at p. 41); Nevada, *see Williams v. State*, 671 P.2d 635, 636 (Nev. 1983) (noting that alibi is not an affirmative defense); *Duckett*, 752 P.2d at 754 (concluding that an alibi instruction should be given in Nevada "when requested and supported"); New Jersey, *see Searles*, 197 A.2d at 386 (noting that alibi is not an affirmative defense); *Echols*, 972 A.2d at 1102 (holding that the failure to give an alibi instruction is error); New York, *see People v. Victor*, 465 N.E.2d 817, 818 (N.Y. 1984); North Carolina, *see State v. Hunt*, 197 S.E.2d 513, 518 (N.C. 1973); Ohio, *see State v. Sorrels*, 593 N.E.2d 313, 316 (Ohio Ct. App. 1991) (noting that alibi is not an affirmative defense); *Mitchell*, 574 N.E.2d at 576 (holding it is error to refuse an alibi instruction if the alibi is properly supported by the evidence); Pennsylvania, *see Commonwealth v. Winebrenner*, 265 A.2d 108, 114 (Pa. 1970) (noting that alibi is not an affirmative defense); *Mikell*, 729 A.2d at 568, 570 (holding a defendant is entitled to an alibi defense when the evidence supports

18

*because* the defense of alibi is not an affirmative defense, the defendant does not have the burden of proving his alibi. Instead, a proper alibi instruction informs the jury that, if the proof adduced raises a reasonable doubt of the defendant's guilt, either by itself or in conjunction with all other facts in the case, the defendant must be acquitted.

*Brown*, 958 A.2d at 838-39 (emphasis added) (alteration, internal quotation marks, and citation omitted). The *Brown* Court continued:

Without an alibi instruction in this case, the jury was erroneously left free to assume that the defendant bore the burden of proving alibi. An alibi instruction is required so that a jury does not make a determination of guilt based on the failure of the defense rather than because the evidence introduced by the state had satisfied the jury of the defendant's guilt beyond a reasonable doubt.

*Id.* at 839 (alterations, footnotes, internal quotation marks, and citation omitted); *see also Robertson v. State*, 685 A.2d 805, 815 (Md. Ct. Spec. App. 1996) ("Because an alibi is not an affirmative defense, a specific alibi instruction eliminates the possibility that the jury will place the burden of proof on the defense with respect to that issue."). Similarly in New Mexico, for alibi, a defendant need only "cast doubt on the proof of the elements of the crime" and bears no burden of proof. *McGuire*, 1990-NMSC-067, ¶ 31; s*ee* UJI 14-5150, comm. cmt. (noting that "it is improper to instruct that the burden is on the defendant to prove his alibi"). These principles are

---

it); South Carolina, *see State v. Bealin*, 23 S.E.2d 746, 753, 755 (S.C. 1943); Tennessee, *see Christian v. State*, 555 S.W.2d 863, 864, 866 (Tenn. 1977); and Vermont, *see State v. Ovitt*, 535 A.2d 1272, 1274 (Vt. 1987) (noting that alibi is not an affirmative defense); *Powers*, 47 A. at 832-33 (concluding the district court correctly instructed the jury on alibi).

in line with New Mexico's law of self-defense, which is also not an affirmative defense and for which the defendant bears no burden of proof. *See Parish*, 1994-NMSC-073, ¶ 17. "The defendant's only obligation is to introduce evidence that will raise in the minds of the jurors a reasonable doubt about the matter." *Id.* ¶ 16. For self-defense, it is the State's burden to *disprove* the defense and the jury must be so instructed to avoid misunderstandings about the burdens. *See id.* ¶ 20. For these reasons, we question whether the categorization of alibi as "not an affirmative defense" justifies the committee commentary's explanation for categorically refusing to instruct the jury on the topic. *See id.* ¶ 17.

{20} We are similarly skeptical of the committee commentary's classification of the alibi jury instruction as an inappropriate comment on the evidence. *See* UJI 14-5150, comm. cmt. Under well-established New Mexico law, an improper comment on the evidence is one that (1) contextualizes specific facts presented; (2) argues or hypothesizes on factual issues within the jury's purview to decide; or (3) otherwise makes a statement about the weight or credibility of evidence in the presence of the jury. *See State v. Padilla*, 1977-NMCA-055, ¶ 13, 90 N.M. 481, 565 P.2d 352 (requiring instructions be "free from hypothesized facts" (internal quotation marks and citation omitted)); *Amador v. Lara*, 1979-NMCA-129, ¶¶ 24-32, 93 N.M. 571, 603 P.2d 310 (considering a court's note to the jury that included an explanation of the damages evidence); *State v. Sanchez*, 1991-NMCA-037, ¶¶ 26-28, 112 N.M. 59,

20

811 P.2d 92 (noting that comments that reflect on the weight of evidence or witness credibility are prejudicial); *see also* Rule 11-107 NMRA ("The court shall not comment to the jury upon the evidence or the credibility of the witnesses."); UJI Crim. Gen. NMRA use note ("For other subject matters not covered by a uniform instruction, the court may give an instruction that is brief, impartial, free from hypothesized facts, and otherwise similar in style to these instructions."). Other jurisdictions have characterized commenting on the evidence slightly differently, but ultimately, warn courts against expressing an opinion about evidence[9] or drawing attention to particular evidence.[10] The Supreme Court of Arizona explained that a comment on the evidence ultimately "express[es] an opinion as to what the evidence proves . . . that would interfere with the jury's independent evaluation of that evidence." *Rodriguez*, 961 P.2d at 1011 (evaluating the state constitutional prohibition on comment on evidence). With these principles in mind, we set forth our alibi instruction again:

---

[9]*State v. Kim*, 2001 ME 99, ¶ 8, 773 A.2d 1051 ("Because traditional alibi instructions are in the nature of a comment by the court on the evidence, such instructions are neither required nor appropriate in most instances." (citing 14 M.R.S.A. § 1105 (1980))).

[10] *See Landa*, 642 N.W.2d at 728 n.2 (cautioning Minnesota courts "that instructions that single out a particular category of evidence shall be avoided"); *Giesberg*, 984 S.W.2d at 250 (holding that in Texas, "a separate instruction on alibi as a defense would draw unwarranted attention to evidence that appellant was at another place when the crime was committed and would therefore constitute an improper comment on the weight of the evidence").

> Evidence has been presented concerning whether or not the defendant was present at the time and place of the commission of the offense charged. If, after a consideration of all the evidence, you have reasonable doubt that the defendant was present at the time the crime was committed, you must find him not guilty.

UJI 14-5150. This instruction does not contextualize or hypothesize the facts or express an opinion about the evidence. The instruction does not "suggest to the jury that the evidence should lead them to any particular result [but r]ather, it reframes the burden of proof in the context of [the defendant]'s alibi theory." *See Rodriguez*, 961 P.2d at 1012. As a result, we do not believe that UJI 14-5150 functions as a comment on the evidence, despite the committee commentary's characterization.[11]

{21}    The State last maintains that "[t]here [was] no reason why the jury needed to be instructed on 'how to properly evaluate' [Defendant's] alibi," because the given instructions sufficiently explained the law. In support of its contention, the State argues that "it is self-evident that, if the jury believed Defendant was in Cedar City that night, he could not have committed the theft and was not guilty of the charges"

---

[11]It is worth noting that "comment on evidence" is often tied to older versions of the instruction like this one: "The law says that the defense of alibi should be received by the jury discreetly and cautiously because it is a defense that can be easily manufactured or fabricated." *Christian*, 555 S.W.2d at 864 (internal quotation marks and citation omitted). The *Christian* Court rejected this instruction because "[t]he overwhelming weight of authority in other states where trial judges are prohibited from making comments upon the evidence is that disparaging comments or references to the issue of alibi are erroneous." *Id.* at 864, 866.

and "UJI 14-5150 does not tell jurors anything they d[id] not already know as a matter of common sense." The Supreme Court of Alaska took a different view:

> Instructions serve purposes other than to inform the jury on the law applicable to the case, one such other purpose being to remind the jury of the main factual disputes raised during trial. Moreover, without proper instruction the jury might erroneously believe that the defendant has the burden of proving alibi.

*Ferguson*, 488 P.2d at 1038. Similarly, the Supreme Court of Pennsylvania observed that:

> "'[G]eneral instructions on the [c]ommonwealth's burden of proving each element of the offense beyond a reasonable doubt, the absence of a burden of proof on the defendant, and assessing the credibility of witnesses do not adequately protect against'" the danger posed by the misapprehensions a jury might indulge regarding the relevance and effect of alibi evidence.

*Commonwealth v. Hawkins*, 894 A.2d 716, 718 (Pa. 2006) (quoting *Commonwealth v. Pounds*, 417 A.2d 597, 634 (Pa. 1980)); *see Rodriguez*, 961 P.2d at 1011 ("[S]tandard instructions about the burden of proof provide a poor substitute for a properly supported alibi instruction."); *Brown*, 958 A.2d at 838-39 (rejecting the state's argument that general instructions on burden of proof eliminated prejudice); *Pulley*, 382 A.2d at 626 (same); *Poe*, 370 S.W.2d at 489 (same); *Duckett*, 752 P.2d at 754 ("Although alibi instructions may, to some extent, merely be a reiteration of other instructions, they are not totally redundant . . . [and] may prevent a jury from mistakenly believing that the defendant has the burden of proving that he was elsewhere, thereby minimizing the prospect of prejudicial error on the point."). We

23

find this reasoning persuasive, particularly in the context of the trial in the present case. We turn then to review the facts as they developed at trial through closing argument but not to discern any error, because, as we have explained, we are precluded from finding error under these circumstances. Instead, we relay the facts, viewed through the lens of our reversible error standard, to demonstrate the risk run by the categorical denial of the instruction.

**C.    The Present Case Demonstrates the Elevated Risk of Juror Confusion and Misdirection When Alibi Evidence is Offered**

{22}    A defendant is entitled to a jury instruction on their theory of the case when the instruction is supported by sufficient evidence at trial. *See State v. Romero*, 2009-NMCA-012, ¶ 22, 145 N.M. 594, 203 P.3d 125; *see also Skippings*, 2011-NMSC-021, ¶ 10 ("A defendant is entitled to an instruction on his or her theory of the case if evidence has been presented that is sufficient to allow reasonable minds to differ as to all elements of the offense." (internal quotation marks and citation omitted)). Denial of a jury instruction rises to reversible error if the defendant shows they were entitled to the denied instruction or that "a reasonable juror [c]ould have been confused or misdirected" by the omission. *State v. Montoya*, 2015-NMSC-010, ¶ 25, 345 P.3d 1056 (internal quotation marks and citation omitted). Confusion or misdirection may arise "despite the fact that the juror considers the instruction straightforward and perfectly comprehensible on its face." *Benally*, 2001-NMSC-033, ¶ 12 (internal quotation marks and citation omitted). Thus, even if a jury

instruction is not facially contradictory or ambiguous, it may create juror confusion or misdirection if the instruction, "through omission or misstatement, fail[s] to provide the juror with an accurate rendition of the relevant law." *Id.*; *see State v. Ellis*, 2008-NMSC-032, ¶ 14, 144 N.M. 253, 186 P.3d 245 ("A jury instruction which does not instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury is reversible error." (internal quotation marks and citation omitted)).

{23}     In the present case, the jury received correct instructions on the State's burden of proof. *See* UJI 14-5060 NMRA. The elements instructions reiterated the State's burden of proof. *See* UJI 14-1601 NMRA (Larceny; essential elements.); UJI 14-1630 (Burglary; essential elements.). During closing argument, the State referred to the alibi evidence as the "alibi card" and repeatedly warned the jury to the effect that Defendant was "trying to get out from under the truth" and get the jury "to buy into that alibi card." After arguing about the alibi evidence, the State asked the jury "as we stand here now, what evidence do you as a jury have to establish the alibi that he wasn't at Lowe's at 10:40 [p.m.] on December 2nd?" Defendant objected, and the trial court warned the State that the argument was "getting close" but overruled the objection. The State continued, told the jury that it had the testimony of Defendant and Majeski and the restaurant receipt, and asked, "Who else could have added to the alibi?" Defendant again objected and the State indicated it would move on,

though continued to make comments that an alibi had not been proved. On rebuttal, the State began by correctly asserting that "if you believe [Defendant] and Mr. Majeski, I should just sit down, because that is reasonable doubt and the verdict would have to be not guilty." The State continued and argued to the jury that the alibi evidence was "being used against [Defendant] to challenge his credibility because the only way he's not guilty is if you believe him and Mr. Majeski."

**{24}** Undoubtedly, as the parties agree, the State may challenge credibility of the alibi evidence and witnesses. The State may not, however, present an argument that serves to shift the burden of proof. The alibi instruction would have told the jury that "[i]f, after a consideration of all the evidence, you have reasonable doubt that the defendant was present at the time the crime was committed, you must find him not guilty." *See* UJI 14-5150. This instruction creates a framework for the jury to understand the State's burden to prove beyond a reasonable doubt that Defendant was present when the crime took place when Defendant contends he was elsewhere. This is especially so in the context of the present case, with the State's continued references to Defendant's failure to prove the alibi, culminating in the argument on rebuttal that the only way Defendant would be "not guilty" was if the jury did not believe the alibi evidence. Absent such an instruction,[12] the likelihood of juror

---

[12]We observe that other jurisdictions have instructions that more explicitly set forth the burdens. *See* Alabama Pattern Jury Instructions: Criminal, Non-Statutory Special Instructions, Alibi (approved April 15, 2016), available at

confusion escalated. We agree with Defendant's observation at oral argument that UJI 14-5150 would have offered an appropriate reminder given the facts and arguments in this case of the State's burdens. The facts of this case further demonstrate the danger of relying on "common sense" to ensure that a jury understands difficult concepts. The elements of larceny require the State to prove the market value of the stolen property, which is unrelated to Defendant's presence. *See* UJI 14-1601 (requiring the State to prove: "1. The defendant took and carried away [property], belonging to another, which had a market value [over $ 20,000]"). The State was required to prove all of the elements of larceny, even if the jury did not believe Defendant's alibi evidence. We therefore observe that despite the proper instructions on reasonable doubt and the State's burden, "a reasonable juror [c]ould

https://judicial.alabama.gov/docs/library/docs/Alibi.pdf; Conn. Criminal Jury Instructions § 2.7-2 (Nov. 2021), available at https://jud.ct.gov/JI/Criminal/Criminal.pdf; Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 3.30.10, GAJICRIM 3.30.10 (West); Instruction 9.120 of the Criminal Model Jury Instructions for Use in the District Court 9.120 (2009), MJ MA-CLE 9.100 (West) (Massachusetts); New Jersey Model Jury Charges (Criminal), "Alibi (Non 2C)" (rev. May 12, 2018), NJ-JICRIM Non 2C Charges (West); CJI2D(NY) GA 21–Alibi *and* 1 Charges to Jury & Requests to Charge in Crim. Case in N.Y. §§ 5:7-:9 (Oct. 2022 update) (New York). Still other jurisdictions have adopted an instruction similar to the instruction that the State referenced at oral argument. *See Frye*, 746 F.2d at 1012-13 (4th Cir.); *see also* Miss. Prac. Model Jury Instr., Crim. § 2:1 (2d ed.) (West) *and* Miss. Plain Lang. Model Jury Instr. Crim. 500 (West); N.H. Criminal Jury Instructions 3.02 (1985), available at https://nhba.s3.amazonaws.com/wp-content/uploads/2020/07/14150407/NH-Criminal-Jury-Instructions-1985.pdf; N.C.P.I.—Crim. 301.10 (2003) (North Carolina); Anderson's S.C. Requests to Charge - Criminal § 6-19 (2d ed. 2012), SC-JICRIM 6-19 (West); WIS JI-CRIMINAL JI-775 (West).

have been confused or misdirected" by the omission of the alibi instruction. *See Montoya*, 2015-NMSC-010, ¶ 25 (internal quotation marks and citation omitted); *see also Romero*, 2009-NMCA-012, ¶ 22.

**{25}** For these reasons, we express our reservations regarding the Use Note and New Mexico's prohibition against giving the uniform alibi jury instruction at the district court's discretion in appropriate circumstances. *Wilson*, 1994-NMSC-009, ¶ 6 (encouraging "the Court of Appeals to express its rationale for any reservations it might harbor over Supreme Court precedent").

## II. The Evidentiary Issues

**{26}** Defendant challenges the district court's admission of Nickel's opinion testimony and exclusion of Docimo's preliminary hearing testimony. We review the evidentiary rulings for an abuse of discretion. *State v. Vargas*, 2016-NMCA-038, ¶ 10, 368 P.3d 1232. "An abuse of discretion occurs when a ruling is clearly against the logic and effect of the facts and circumstances of the case, or when a ruling indicates a misapprehension of the law." *State v. Chavez*, 2022-NMCA-007, ¶ 39, 504 P.3d 541 (alterations, internal quotation marks, and citations omitted). We will only reverse where the abuse is "clearly untenable or not justified by reason." *State v. Maxwell*, 2016-NMCA-082, ¶ 10, 384 P.3d 116 (internal quotation marks and citation omitted).

## A. The District Court Did Not Abuse Its Discretion in Admitting Nickel's Opinion Testimony

{27} At trial, Defendant argued that Nickel's testimony amounted to expert testimony and not lay testimony. Since trial, this Court decided *Chavez*. In that case, we rejected police officer testimony that "form[ed] conclusions for jurors that they are competent to reach on their own." 2022-NMCA-007, ¶ 42 (internal quotation marks and citation omitted). Defendant now relies on *Chavez* to argue that Nickel's testimony that identified Defendant in the incident video was improper. The heart of the parties' dispute about Nickel's testimony is whether her opinion was helpful to the jury in accordance with Rule 11-701(B) NMRA and that is where we focus our inquiry.

{28} The district court viewed Nickel's testimony to be lay opinion testimony. Lay opinion testimony is admissible only if it is "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Rule 11-701(B). The helpfulness of opinion testimony that identifies an individual in video evidence is based on whether "the witness is more likely than the jury to make an accurate identification." *Chavez*, 2022-NMCA-007, ¶ 41 (stating this Court's acceptance of "this general rule" (citing *State v. Sweat*, 2017-NMCA-069, ¶¶ 21-24, 404 P.3d 20)). In *Sweat*, this Court adopted five factors "relevant to a determination of whether a lay witness is more likely than the jury to identify the defendant correctly" in video or photographic evidence, including,

29

(1) the witness's general level of familiarity with the defendant's appearance; (2) the witness's familiarity with the defendant's appearance at the time the surveillance photograph was taken or whether the defendant was dressed in a manner similar to the individual depicted; (3) whether the defendant disguised his or her appearance at the time of the offense; (4) whether the defendant had altered his or her appearance prior to trial; and (5) the degree of clarity of the surveillance recording and the quality and completeness of the subject's depiction in the recording.

2017-NMCA-069, ¶ 22 (alterations, internal quotation marks, and citations omitted). Any one of these five factors can demonstrate that the witness is more likely than the jury to make a correct identification of a person appearing in a video recording. *Id.*; *Chavez*, 2022-NMCA-007, ¶ 41.

{29} This Court in *Chavez* stressed the importance of preventing a witness from drawing conclusions that the jury was in an equally apt position to draw on its own. 2022-NMCA-007, ¶ 41. The district court in *Chavez* permitted an officer, based on her "training and experience," to provide opinion testimony identifying "a dark object" in a black-and-white surveillance video as a gun. *Id.* ¶ 40 (internal quotation marks omitted). This Court determined, however, that the officer (1) had no more interaction or "special familiarity with the visual appearance" of the gun, which was "an ordinary object;" (2) "was not present on the night of the incident" and "had no opportunity to observe whether [the d]efendant was armed;" and (3) did not have "knowledge of anything idiosyncratic about [the d]efendant or his belongings." *Id.* ¶ 42. Because the officer solely relied on evidence already admitted and available to

30

the jury to identify the gun in the video and had no more knowledge or interaction with the gun than the jury, the officer had no special familiarity with the gun that made her more likely than the jury to accurately identify the gun in the video evidence. *Id.* The identification testimony was therefore not helpful to the *Chavez* jury. *Id.*

{30}     In the present case, Defendant's argument hinges on *Chavez*. According to Defendant, because the jury had access to the "plethora" of video evidence, the jury had "a similar level of competence as Nickel" to determine whether Defendant was the person in the incident footage. Consequently, Defendant argues that "Nickel's opinions in her testimony were conclusions that the jury could have arrived at based on the evidence provided at trial" and that Nickel's opinion testimony was therefore unhelpful and improper. Defendant's argument disregards Nickel's undisputed personal knowledge of Defendant.

{31}     Nickel worked with Defendant for about two years and had almost daily contact with Defendant during that time. This evidence establishes a special familiarity beyond that of the officer in *Chavez*. Defendant concedes that this evidence satisfies one of the five *Sweat* factors, the witness's familiarity with Defendant's appearance. *See* 2017-NMCA-069, ¶ 22. Defendant further concedes that because the person in the incident footage was dressed in disguise, a second *Sweat* factor supports admission of Nickel's identification testimony. *See id.*

31

Nickel's knowledge of Defendant and the fact that the face of the person in the incident footage was concealed makes it more likely that Nickel's testimony could help the jury to identify Defendant in the recordings. As a result, the district court did not abuse its discretion by admitting Nickel's opinion testimony.

**B.    The District Court Did Not Abuse Its Discretion in Excluding Docimo's Preliminary Hearing Testimony**

**{32}**    Defendant also challenges the district court's exclusion of the preliminary examination testimony of Docimo. Generally, a transcript would be considered inadmissible hearsay, except in certain circumstances if the witness is unavailable. *See* Rule 11-801(C) NMRA (defining hearsay); Rule 11-802 NMRA (excluding hearsay as inadmissible); Rule 11-804 NMRA (unavailable witness). A witness is unavailable if the party calling the witness was unable "by process or other reasonable means, to procure" the witness's attendance. Rule 11-804(A)(5). Throughout this case, Defendant has contended that he met the burden to establish that he was unable by "other reasonable means" to procure Docimo's attendance at trial. *See State v. Ewing*, 1982-NMSC-003, ¶ 17, 97 N.M. 235, 638 P.2d 1080 (explaining the burden is on the party offering the transcript to demonstrate unavailability (internal quotation marks and citation omitted)). Initially, the district agreed that Docimo was unavailable and therefore ruled that the preliminary hearing transcript was admissible. At trial, however, Majeski, testified that he had contact with Docimo in the weeks before trial. Based on this testimony, the district court

32

determined that Plaintiff did not establish Docimo's unavailability for the purposes of Rule 11-804. Defendant maintains his position on appeal that the investigator had not been able to locate Docimo and Defendant himself had no knowledge of Docimo's whereabouts.

{33} For support, Defendant analogizes to *Ewing*, in which our Supreme Court held that the party seeking admission of hearsay had made reasonable efforts to secure the witness. *See* 1982-NMSC-003, ¶ 17. Defendant contends that like in *Ewing*, his investigator had difficulty serving Docimo. Docimo did not want to come to trial, *see id.* ¶¶ 14, 17, and therefore, Defendant maintains that his efforts to secure Docimo were reasonable. Unlike in *Ewing*, however, Defendant did not check other potential addresses, schools, welfare offices, or talk to neighbors. *See id.* ¶ 14. To the contrary, the evidence shows that Defendant's investigator did not even ask Majeski about Docimo's whereabouts, even though Majeski was Docimo's husband. Under these circumstances, we cannot say that the district court's exclusion of the preliminary hearing transcript was an abuse of discretion and "clearly against the logic and effect of the facts and circumstances of the case." *Maxwell*, 2016-NMCA-082, ¶ 10 (internal quotation marks and citation omitted).

## III.   The Sufficiency of the Evidence

{34}   Defendant last challenges the sufficiency of the evidence supporting the larceny conviction and the amount of the restitution order. We are satisfied that sufficient evidence supported both.

## A.   The Evidence Supported Defendant's Larceny Conviction

{35}   The elements essential to conviction are set forth in the relevant uncontested jury instructions. *See State v. Garcia*, 2016-NMSC-034, ¶ 17, 384 P.3d 1076 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alteration, internal quotation marks, and citation omitted)). In this case, the jury instruction as to Count I, Larceny Over $20,000, provided:

> For you to find . . .Defendant guilty of Larceny as Charged in Count 1, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.   Defendant took and carried away Cash—United States Currency, belonging to another, which had a market value over $20,000;
>
> 2.   At the time he took this property, Defendant intended to permanently deprive the owner of it;
>
> 3.   This happened in New Mexico on or about the 2nd day of December[,] 2017.

*See* UJI 14-1601. Defendant challenges the sufficiency of the evidence only as to the first element. "In reviewing for sufficiency of the evidence, we must determine whether substantial evidence of either a direct or circumstantial nature exists to

support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Torres*, 2018-NMSC-013, ¶ 42, 413 P.3d 467 (internal quotation marks and citation omitted). We view the evidence in the light most favorable to the guilty verdict and only find evidence is substantial when "a reasonable mind might accept [it] as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted); *see State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

{36}  At trial, the State presented the testimony of both Nickel and Detective Rock that over $20,000 had been stolen, but the two witnesses testified to different amounts. Nickel testified that approximately $36,000 had been stolen, based on her review of accounting paperwork that was not introduced at trial. Detective Rock, based on Officer Flores's report, testified that the amount was $33,040.85. Any conflict between Nickel's and Detective Rock's testimony was to be resolved by the fact-finder, and regardless, a rational jury could conclude that this evidence establishes that more than $20,000 was stolen. *See State v. Landlee*, 1973-NMCA-112, ¶ 3, 85 N.M. 449, 513 P.2d 186 (considering conflicting testimony as to the amount stolen in a larceny trial); *see also State v. Dominguez*, 1977-NMCA-128, ¶¶ 14, 15, 91 N.M. 296, 573 P.2d 230 (permitting the jury to determine that the value of items stolen).

{37} Defendant maintains that this evidence—at best—supports the notion that Nickel and Detective Rock *believed* that more than $20,000 was taken but that without the accounting or report supporting their testimony, the evidence was legally insufficient for conviction. Therefore, Defendant contends that the State failed to meet its burden of proof in violation of Defendant's due process rights under both the federal and state constitutions. We disagree. No authority suggests the amount taken must be established by documentary evidence. *See Landlee*, 1973-NMCA-112, ¶¶ 2, 3. To the extent Defendant urges us to adopt a requirement for documentary evidence, based on a New York trial court's slip opinion in *People v. Cruz*, 130 A.D.3d 1538 (N.Y. App. Div. 2015), we decline to do so. Applying our well-established standard, viewing the evidence in the light most favorable to the guilty verdict, we conclude that a jury could rationally determine over $20,000 was taken from Lowe's. *See* § 30-16-1(F); *see Landlee*, 1973-NMCA-112, ¶ 3.

**B.      The Evidence Supported the Restitution Order**

{38} Defendant additionally contends that there was no basis for the district court's order requiring $33,040.83 in restitution, because (1) the amount of restitution did not match the evidence from trial, and (2) no presentencing investigation or evidence supported the amount. As a result, Defendant argues that he had no notice or mechanism to challenge the amount of restitution. Defendant concedes this issue is not preserved, and we therefore review for fundamental error. *See In re Aaron L.*,

36

2000-NMCA-024, ¶ 10, 128 N.M. 641, 996 P.2d 431. The fundamental error exception to the preservation rule applies "only under extraordinary circumstances to prevent the miscarriage of justice." *State v. Silva*, 2008-NMSC-051, ¶ 13, 144 N.M. 815, 192 P.3d 1192 (internal quotation marks and citation omitted), *holding modified on other grounds by State v. Guerra*, 2012-NMSC-027, ¶¶14, 15, 284 P.3d 1076.

{39} According to Defendant, the trial evidence did not support the restitution amount ($33,040.83) because it differed from the amounts testified to by Nickels ($36,000) and Detective Rock ($33,040.85). We note, however, that the amount ordered for restitution was two cents less than the amount testified to by Detective Rock. Defendant had notice of Detective Rock's testimony from the trial, and the difference between Detective Rock's testimony and the restitution order is nominal—and ultimately the restitution order required Defendant to pay two cents *less* than the testimony indicated. We decline to view this two-cent decrease as an "extraordinary" circumstance requiring our intervention "to prevent the miscarriage of justice." *See id.* (internal quotation marks and citation omitted). Because the restitution amount was sufficiently supported by the trial evidence, we do not consider Defendant's argument that a presentence report was necessary to provide notice of the restitution amount. Accordingly, we find no fundamental error.

**CONCLUSION**

{40}   For the reasons stated herein, we affirm.

{41}   **IT IS SO ORDERED.**

_____
                        **KATHERINE A. WRAY, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**MEGAN P. DUFFY, Judge**